JOHN LEONARD ET AL., DEFENDANTS IN ERROR, v. THE CAMDEN NATIONAL BANK, PLAINTIFF IN ERROR.

Argued March 10, 1904—Decided November 14, 1904.

A certain fund having been deposited with the defendant, the defendant, as evidence of its obligation respecting the fund, addressed to the beneficiary a letter stating that the fund was "to be held by us to indemnify you in the event of the loss of the cargo of old iron loaded by you in the bark 'Primus.'" The cargo having been lost, debatable questions arose as to the beneficiary intended, as to the ownership and value of the cargo, and as to the nature of the indemnity. *Held,* that the defendant could not be required to litigate these questions in a common law action brought by the plaintiff to recover the amount of the fund, and that until the questions were adjusted among the parties interested in their settlement, the defendant's obligation was fulfilled by holding the fund.

On error to the Supreme Court. This case was tried at the Essex Circuit, before Gummere, Chief Justice, and a jury.

The plaintiffs in this suit, being dealers in scrap iron and steel, entered into a written contract with the American Bridge Company, dated August 7th, 1902, by which they agreed to sell to that company all the scrap which they theretofore had purchased or thereafter during the period ending August 1st, 1903, should purchase in the West Indies, and not to sell such scrap to any other person or corporation in the United States, except with the consent of the bridge company. The price to be paid for the scrap delivered on board cars in Philadelphia was $14 per ton, subject to certain changes. By a writing dated October 22d, 1902, the plaintiffs chartered the bark "Primus" to take a cargo of scrap, which they had bought in Cuba, from that island to Philadelphia. The charter party provided that "the vessel should guarantee insurance at lowest regular rate," and that "the charterers should not be obliged to begin loading before a deposit of $23,000 [afterwards increased to $25,800] in guarantee of

such insurance had been made." Under this provision the owners of the vessel deposited with the defendant, the Camden National Bank, the sum of $23,000 (afterwards increased to $25,800), accompanying it with the following letter:

"CAMDEN, N. J., October 31st, 1902.

"*Mr. Francis C. Howell, Cashier Camden National Bank, Camden, N. J.:*

"DEAR SIR—I hand you herewith draft of cashier of Camden National Bank for twenty-three thousand ($23,000) dollars.

"You are to hold this amount to indemnify you against any loss occurring by reason of your having this day sent to the American Bridge Company of Phila., Penna., the following letter:

" '*Mr. Chas. S. Belsterling, Traffic Manager American Bridge Co., 259 So. Fourth St., Phila., Pa.:*

" 'DEAR SIR—The owners of the bark "Primus" have this day deposited with us the sum of twenty-three thousand ($23,000) dollars, to be held by us to indemnify you in the event of the loss of the cargo of old iron loaded by you in the "Primus," according to the terms of a certain charter party, executed by L. St. Clare, master, and Paul Noble, agent for Leonard & Company, dated October twenty-second, nineteen hundred and two—liability in no case to exceed twenty-three thousand ($23,000) dollars. The above-mentioned indemnity from loss is to be and remain in effect, as protection against loss of said cargo, from the time said bark "Primus" takes aboard said cargo, or any of said cargo is placed on lighters to be delivered on said bark, until full delivery at Philadelphia, Penna.

" 'Yours truly,

" 'FRANCIS C. HOWELL,

" '*Cashier.*'

"If this proposition is accepted by the American Bridge Company, you are to hold this amount until you receive satis-

factory evidence that your liability by reason of the above letter is cancelled, when the sum of twenty-three thousand ($23,000) dollars, less discount, is to be returned to me.

"Very truly,

"RALPH W. E. DONGES,

"*Trustee.*"

On receipt of the deposit and Mr. Donges' letter, the cashier of the bank signed and sent to Mr. Belsterling the recited letter.

In November and December, 1902, the cargo was accordingly shipped, but on January 1st, 1903, the "Primus," on her way to Philadelphia, was wrecked near Nassau, and her cargo was lost. Thereupon the plaintiffs, having demanded the amount of the deposit from the bank, brought suit in the Supreme Court to recover the same. At the trial in the Essex Circuit the plaintiffs proved that the president of the American Bridge Company had consented that they might withdraw this cargo from the agreement of August 7th, 1902, and sell it to other parties for the best price they could get; that the net value of the cargo at Philadelphia would exceed the deposit, and that Mr. Belsterling, to whom the cashier's letter was addressed, was the plaintiffs' Philadelphia agent, as well as the traffic manager of the American Bridge Company. On this proof the trial court directed a verdict in favor of the plaintiffs for the amount of the deposit, with interest, and the correctness of this instruction is now to be determined on the present writ of error.

For the plaintiff in error, *Lindley M. Garrison* and *Ralph W. E. Donges.*

For the defendants in error, *Robert H. McCarter.*

The opinion of the court was delivered by

DIXON, J. We think the instruction was wrong. This suit pre-supposed a promise by the defendant to pay the

amount of the deposit to the plaintiffs in case the cargo was lost and would have been worth that amount if delivered in Philadelphia. But no such promise appears in the writings by which the obligation of the defendant was created. In the first place, the party indicated by those writings as the beneficiary of the deposit was the bridge company, not the plaintiffs, and we cannot perceive how in a court of law the plaintiffs can be substituted for that company. Perhaps a court of equity might be persuaded by extrinsic circumstances that the real purpose of the parties was to protect the owners of the cargo, whoever they might be, and thus by reformation of the writings secure indemnity to the plaintiffs. But even then the rights of the American Bridge Company would call for consideration, for it needed the consent of that company, not merely of its president, to withdraw the cargo from the contract of August 7th, 1902, and if such consent had not been given the company might claim indemnity for the loss of all value beyond the price which it was to pay.

In the next place, the bank did not contract *to pay* the deposit to the beneficiary; its contract was *to hold* the fund for the purpose of indemnifying the beneficiary. The fund belongs to the depositors, subject only to the claim of the beneficiary for indemnity, and until that claim is established against them the obligation of the bank to the beneficiary is fulfilled by holding the fund. It would be highly unjust to permit that claim to be judicially established by a proceeding in which the depositors were not parties. Not only may questions be raised as to the real claimants, but the amount of the claim is also questionable; for it is not a matter beyond controversy whether the indemnity provided is such as marine insurance would afford or such as would be secured by a guarantee of safe delivery at Philadelphia. With the settlement of such disputes the bank, the present defendant, has no concern, and in the terms of its bargain it has carefully refrained from expressing any obligation either to litigate them with the claimants or to initiate proceedings looking to such litigation. Its sole obligation is to hold the

fund until the rights of claimants are settled *inter sese,* and then to surrender the fund to the rightful claimants.

These views are supported by the decision on similar conditions in *Bushnell* v. *Chautauqua National Bank,* 74 N. Y. 290, where the equity jurisdiction of the court enabled it to give the appropriate remedy.

The judgment under review should be reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Dixon, Garrison, Fort, Swayze, Bogert, Vredenburgh, Vroom, Green, Gray.   10.