JAMES LICARI ET AL., PLAINTIFFS IN ERROR, v. CHARLES CARR, DEFENDANT IN ERROR.

Submitted July 8, 1912—Decided March 3, 1913.

1. Where the plaintiff in ejectment shows a paper title to the land demanded, with possession thereof by him or his predecessors in title under whom he claims, a *prima facie* case is made against one who has no paper title and who rests his right to possession upon an entry subsequent to the commencement of the paper title and possession thereunder, and imposes on him the burden of establishing his right to possession.

2. If the defendant in such action claim title by a user adverse and hostile to such plaintiff and his predecessors for twenty years or more, which, if established, will vest him with a title paramount to that of the plaintiff, it is a defence which the defendant must establish by a preponderance of proof.

---

On error to the Supreme Court.

For the defendant in error, *John S. Applegate & Son.*

For the plaintiffs in error, *William B. Mackay, Jr.,* and *Wilbur A. Heisley.*

The opinion of the court was delivered by

BERGEN, J.  The plaintiff brought an action in ejectment to recover possession of a lot of land thirty-one feet wide and fifty-two feet deep, being a parcel of a larger tract of wild and uncultivated beach land lying along the shore of Raritan bay, in Monmouth county, which consists of two adjoining lots called in this case the "Wilson" and "Matthews" tracts, respectively, and which, according to the paper title exhibited by the plaintiff, were vested in one Herbert Denyse Lloyd, at least·as early as 1897, and in the plaintiff in 1909 by virtue of mesne conveyances made by Lloyd and his successors in title.

. The defendant located upon the land described in the declaration in this cause without pretence of a paper title, and defends this action upon two grounds—*first,* that the plaintiff has shown no title; *second,* that he and those under whom he claims have acquired a title by a user, adverse and hostile, against the plaintiff and his predecessors in title for the statutory period.

It appears that other persons have occupied small parcels of the same tract under like conditions, and that the plaintiff has instituted actions in ejectment against each of such occupants, claiming they are squatters without title or right of possession.

In support of his case the plaintiff offered in evidence a paper title by an unbroken chain of conveyances from January 6th, 1834, to October 20th, 1909, when the property was conveyed to him, commencing with a deed made by the. sheriff of the county of Monmouth, which purported to convey to Andrew Wilson that portion of the tract called in these proceedings the·"Wilson Tract," of which the land sought to be recovered from this defendant is a part.   In 1858 Andrew Wilson conveyed the tract to Isaac S. Lloyd, who held under this deed until he died in 1879 intestate, and in 1888 his heirs-at-law conveyed to his son, Herbert Denyse Lloyd, who, by a deed dated August 7th, 1909, conveyed to Gustave Maurer, and he in turn conveyed to the plaintiff October 20th, 1909.

In addition to this paper title the plaintiff produced testimony tending to show that Isaac S. Lloyd, as long ago as 1859, exercised acts of ownership and possession over this tract by, among other things, building a dock thereon, and continued during his lifetime such acts of proprietorship and dominion over it as its character made possible, indicating his possession thereof. There was also testimony from which it might be inferred that Herbert Denyse Lloyd, during the time he held the paper title, asserted a control over it amounting to possession thereof.

The first point which the plaintiff in error raises on this review is "that the record title, so called, completely and absolutely failed." If by this it is meant that the plaintiff failed to trace his title from the original proprietors of the state, this would be true, but the plaintiff did not rest alone upon a paper title covering a period of over half a century, but produced proof tending to show that under color of the paper title he and his ancestors had been in actual possession of the land, and this fact the jury found he had established. The rule in this state is that in actions of this character the plaintiff "should either show a title derived from an acknowledged owner, or from an authority having power to transmit title, or should show possession by himself or by someone from whom his title comes." *Rollins* v. *Atlantic City Railroad Co.,* 41 *Vroom* 664, 667. In the present case the plaintiff produced a paper title and also evidence tending to show possession by himself and his ancestors in title since 1859.

While the brief of the plaintiff in error is not clear as to the exception upon which the argument of the question just discussed is based, we assume that it is rested upon the exceptions taken to the refusal to nonsuit, or to direct a verdict for the defendant, for if, as insisted by the plaintiff in error in his brief, "the judge should have peremptorily instructed the jury that the record title of the plaintiff failed, and that there was no evidence to be considered by the jury upon which it could legally predicate a verdict in favor of the plaintiff, upon the theory of its having a record title," the question could only have been raised upon such motions, and a *prima facie*

case having been made by the plaintiff, if the testimony offered
by the plaintiff be credited by the jury, a question of fact for
a jury was presented, notwithstanding contesting testimony
offered by defendant, and therefore the denial of these motions
was not error.

The next point which the plaintiff in error urges is, that
whatever the *prima facie* case made by the plaintiff might be,
it was met and destroyed by defendant's proofs because it ap-
peared that the defendant had acquired a title through a user
of the land by himself, and those through whom he claimed,
for more than twenty years, which was adverse and hostile to
their possession, and for that reason a directed verdict for the
defendant should have been ordered.   This must be rested
upon the claim that such hostile user conclusively appears,
otherwise there would be no foundation for defendant's argu-
ment, because, if not conclusive, then it would be, as the trial
court held, a question of fact to be settled by the jury.   The
evidence on this point is that one Pope squatted upon the
property in 1872, during the lifetime of Isaac S. Lloyd, and
while he was in possession under color of his deed from An-
drew Wilson, if the plaintiff's testimony be credited, and built
thereon a small house or shack in which he lived, as he testi-
fies, about twenty-one years, when he sold the house to Rulif
Ludlow, who subsequently took it away.

The property of the defendant in this suit was not within
any actual enclosure made by Pope, but he testified that at the
time he built his house he drove stakes at the corners of a plot
which, if fenced, would embrace about three acres of land.
There is no pretence by defendant that the attention of Mr.
Lloyd was ever called to these stakes or that the land was ever
enclosed.   Pope did testify that he put a fence around some
of the land near the house, but he expressly says that the land
which this defendant is now claiming was not within any such
enclosure, but would be within imaginary lines running be-
tween the stakes which he had driven in the ground.   Certainly
the act of driving such stakes, which was never brought to
the knowledge of the party in possession under his paper title,
without other acts indicating possession, cannot be said to con-

clusively establish the fact of a possession adverse and hostile to such owner. The possession must be visible, and intended to be hostile, and whether such acts amounted to adverse user was submitted to the jury by the trial court, and in this there was no error. Possession, to be effective to support such a defence, must be of a character calculated to inform the true owner of the nature and purpose of the possession.

Where the plaintiff in ejectment shows a paper title to the land demanded with possession thereof by the plaintiff or his predecessors in title under whom he claims, a *prima facie* case is made against one who has no paper title and who rests his right to possession upon an entry, subsequent to the commencement of the paper title and possession thereunder, and imposes on him the burden of establishing his right to possession. *Galatro* v. *Shabut,* 43 *Vroom* 458. Possession, as a presumption of law, is intended only in favor of the true owner, and every presumption is in favor of possession in subordination to his title. *Foulke* v. *Bond,* 12 *Id.* 527, 547.

Therefore, if a defendant claim title by a user, adverse and hostile to such plaintiff and his predecessors for twenty years, which, if established, will vest the defendant with a title paramount to that of the plaintiff, it is a defence which the defendant must establish by a preponderance of evidence.

The well-settled rules of law required the trial court in this case to submit to the jury, first, the question whether the plaintiff had made out a *prima facie* case, and second, if he had, whether the defendant had overcome it by sufficient proof of an adverse and hostile user, and this was the course followed. In this view of the case it becomes quite unimportant what rights Rulif Ludlow took from Pope, for the reason that the jury have found that there was no sufficient proof of adverse user by Pope, and therefore he conferred nothing upon Ludlow when he sold to him the house which he afterwards removed.

It is not pretended that this defendant occupied the land for a sufficient length of time to support any such defence, but he claims that he held possession under Ludlow. In considering Ludlow's position, however, it is proper to say that there

was evidence in the case from which it might be inferred that Ludlow was acting as the agent of Herbert Denyse Lloyd during the time he held the title, looking after the property for him and collecting rents, and also that he did in fact pay rent for several years to Lloyd, during which time he gave the defendant in this case permission to occupy the land. If this was true, and there was evidence of its truth, Ludlow could not lawfully claim to hold adversely to his landlord.

Errors are assigned to the admission of testimony, but these we do not consider injurious to the defendant. They are directed to the admission of testimony of acts of possession by plaintiff or his predecessors in title of other parts of the entire tract, of which the land now in controversy was a part. This was entirely proper, for testimony showing possession of a part of a tract of land may be shown by acts of dominion over different portions thereof exercised with reference to ownership or possession of the whole. It is not necessary that the owner should actually stand upon every foot of the land to indicate his possession of the entire tract. The testimony objected to had a tendency to show that both tracts were, as a whole, constructively in possession of the reputed owners under the paper title, and therefore properly admitted.

The plaintiff in error also challenges that part of the charge of the court relating to the defendant's claim of adverse possession where the jury was instructed that when a defendant assails the plaintiff's title by one which he claims he has acquired by adverse and hostile use, the "burden shifts from the plaintiff to the defendant," and he is bound to make out this defence by a preponderance of evidence. This is a correct statement of the law.

When this record was opened to the court it appeared that the plaintiff in error had included in his writ several judgments which the defendant in error had recovered against divers persons, defendants in other actions in ejectment, all of which, with a single exception, had been entered by consent, according to a stipulation that the result in this case should control the other actions, and as only one judgment can be reviewed by the same writ of error, the writ was subject to dis-

missal, but as the record disclosed that the trial of the case against Licari was intended to raise and dispose of the controlling questions involved in all, with a single exception, we allowed the parties to stipulate that the writ should be limited to a review of the judgment against Licari, and as counsel have so stipulated the writ will be amended so that the only judgment brought under review by it is that judgment, which is the only one we have considered and determined, leaving the others subject to the legal effect of such consent or stipulation as the parties thereto may have engaged to be bound by. As we find no error in the amended record the judgment under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY, JJ. 13.

*For reversal*—None.