### HOUGHTON COUNTY v. MASSIE.

1. Adverse Possession—Ejectment—Owner Deemed in Possession.

Plaintiff in ejectment, having title of record to the land, is deemed in law to be in seisin and possession thereof and such seisin is coextensive with the right, and continues until the owner is ousted by the adverse possession of another.

2. Same — Evidence of Adverse Possession — Presumptions in Favor of Owner.

Evidence of adverse possession must be strictly construed, and every presumption is in favor of the true owner.

3. Same—Possession Presumed to be in Subordination to Owner.

Possession, as a presumption of law, is intended only in favor of the true owner and every presumption is in favor of possession in subordination to his title.

4. SAME—EJECTMENT—BURDEN OF PROOF.

In ejectment by the owner of the title of record, the burden of proving adverse possession by clear and cogent evidence was upon defendants.

5. SAME—LANDLORD AND TENANT—REPUDIATION OF LEASE—BURDEN OF PROOF—ACTUAL NOTICE NECESSARY—CONSTRUCTIVE NOTICE.

In ejectment by the owner of the title of record, where defendants claimed adverse possession under an instrument which they claimed to believe was a deed, but which according to plaintiff's proofs was a lease, the burden of proof was upon defendants to show that their possession was hostile in its inception, or, if under a lease, that it had been repudiated and notice thereof in fact given to plaintiff; constructive notice being insufficient.

6. SAME—NOTICE—SUFFICIENCY.

This issue was not met by the denial of one of defendants of knowledge of permission granted by plaintiff to defendants to occupy the premises.

7. SAME—PERMISSIVE POSSESSION.

Where two are in occupancy of land, their holding is by permission and not adverse if either one of them has invoked and obtained permission from the owner for both.

8. SAME—PERMISSIVE POSSESSION—WAIVER.

By becoming a lessee with his partner, one who claimed title by adverse possession thereby waived all claim of possession adversely to the lessor.

9. SAME—ACTUAL NOTICE OF HOSTILE POSSESSION NECESSARY WHERE ENTRY PERMISSIVE.

Required notice of hostile holding under a permissive entry could not be predicated upon claim of ownership by defendants, or understanding to such effect by neighbors or assessing officers, or the building of fences, clearing of land or payment of taxes; nothing short of actual notice to the owner being sufficient.

10. NEW TRIAL—EVIDENCE—WEIGHT OF EVIDENCE.

The verdict in favor of defendants being so clearly against the weight of the evidence, plaintiff's motion for a new trial should have been granted.

Error to Gogebic; Driscoll (George O.), J.   Sub-

mitted June 9, 1921. (Docket No. 32.) Decided October 3, 1921.

Ejectment by the county of Houghton against Paul N. Massie and another. Judgment for defendants. Plaintiff brings error. Reversed.

*Rees, Robinson & Petermann,* for appellant.

*James A. O'Neill,* for appellees.

WIEST, J. This is a suit in ejectment by the county of Houghton and involves title to 80 acres of land in Gogebic county, supposed now to contain a valuable mineral deposit. The plaintiff is the owner of the title of record, and defendant Paul N. Massie, through Napoleon D. Massie, his father and immediate grantor, claims title thereto by adverse possession. At the trial plaintiff moved for a directed verdict in its favor. The jury rendered a verdict for defendants, and plaintiff moved for a new trial alleging error in the admission of testimony, and in refusal of requests to charge, and in the charge to the jury and improper argument by counsel for defendants, and that the verdict was against the great weight of the evidence.

In disposing of the question of whether the verdict is against the great weight of the evidence we shall have occasion to pass upon most of the points raised by the motion for a new trial, and feel the application of the legal principles herein stated renders it unnecessary to extend the opinion to a consideration of each point by itself. The plaintiff having title of record to the land, is deemed in law to be in seisin and possession thereof.

"Such seisin is coextensive with the right, and continues until the owner is ousted by the adverse possession of another." 1 R. C. L., p. 685.

"Evidence of adverse possession must be strictly construed, and every presumption is in favor of the true owner." *Sheldon* v. *Railroad Co.*, 161 Mich. 503.

"Possession, as a presumption of law, is intended only in favor of the true owner, and every presumption is in favor of possession in subordination to his title." *Licari* v. *Carr*, 84 N. J. Law, 345 (86 Atl. 421).

The burden of proving adverse possession by clear and cogent evidence was upon defendants. *Highstone* v. *Burdette*, 54 Mich. 329; *Jeffery* v. *Hursh*, 45 Mich. 59; *Conner* v. *Railroad Co.*, 183 Mich. 241.

The record fully establishes the fact that a partnership existed between Napoleon D. Massie and John W. Morse under the name of Massie & Morse from 1889 until Mr. Morse died in 1905, and that the partnership was engaged in handling cord wood and mining timber, buying standing timber and cutting it for the trade they had, and also carrying on a livery business.

The defendants, to overcome the legal presumption of possession in subordination to plaintiff and to maintain the claimed right to hold the property under title acquired by adverse possession, offered testimony that in 1889 the defendant Napoleon D. Massie heard that the plaintiff wanted to sell the land, and in October of that year he received a written instrument which he claims he understood was a deed, from the First National Bank of Bessemer, and paid the bank therefor the sum of $775, and took the instrument home and placed it in a drawer, but did not record it, and although he made search for many years for it he was unable to find it; that he is unable to read or write, except to sign his name; that in November, 1889, he started to cut the timber off the land, having an arrangement with one J. W. Morse, under

which Morse furnished the teams and drivers and Mr. Massie his labor and the timber and they divided the profits; that it took them about two years to remove the timber; that in 1891 Mr. Massie fenced some of the land, and in 1892 inclosed the whole 80, and that about 35 acres have been cleared and used for the raising of crops and the rest for pasture; that in June, 1912, Napoleon D. Massie deeded the land to his son Paul; that the defendant Napoleon D. Massie claimed title to the land under the instrument obtained in 1889; that he caused the land to be assessed in his own name and paid the taxes for most of the years; that he never took a lease from plaintiff and never heard of a lease having been given to any one by the plaintiff before 1911; that he at all times claimed to own the property and it was commonly understood in the vicinity that he was the owner.

Meeting this issue the plaintiff clearly established the fact that the county of Houghton never gave Napoleon D. Massie a deed to the land, but did, on the 14th day of October, 1889, through Mr. R. R. Goodell, its duly authorized land agent, convey to Napoleon D. Massie and J. W. Morse, by timber deed (so-called), the wood and timber on the land in suit for the sum of $350, and authorized them to enter upon and occupy the land for the removal of such timber and for agricultural purposes for the period of 5 years, conditioned, however, that they pay the taxes, and on the 29th day of June, 1895, following negotiations by letters from Massie & Morse, the county executed a lease of the land to Massie & Morse for the consideration of $25 then paid, and agreed that Massie & Morse might continue to occupy the premises on payment of $25 per year and the payment of all taxes or assessments levied against the property, from and including the tax of 1897. This lease was signed by Mr. Goodell, agent for the county,

and by "Massie & Morse," and witnessed as to the signature of Massie & Morse by William I. Prince.

During the trial counsel for plaintiff learned of a suit brought in the circuit court for the county of Gogebic in 1897 by Massie & Morse, copartners, against the Chicago & Northwestern Railway Company, and subpœnaed Mr. Norris, the attorney who represented the plaintiffs in that case, to bring in his office files and records. This was done and disclosed that that suit, according to the declaration filed therein, was brought by Napoleon D. Massie and John Morse, copartners, as Massie & Morse, as owners of a leasehold interest, and as such in possession of the premises in suit, for damages to their growing crops occasioned by cattle coming thereon from the railroad right of way. That case came on for trial in the Gogebic circuit in March, 1898, and both J. W. Morse and Napoleon D. Massie gave testimony. Their testimony was transcribed and introduced in evidence in this case. In the office files of Mr. Norris in that suit was found the timber deed (so-called), and lease of the land in suit made in October, 1889, by plaintiff to Napoleon D. Massie and John W. Morse, and also the lease of June 29, 1895, by the county of Houghton to Massie & Morse and the evidence fully established the authenticity of such papers.

Napoleon D. Massie testified that he went to Button & Norris, the attorneys in the case mentioned, and whatever papers they had about the suit against the railroad company he gave them, and all the information the attorneys got on which they brought suit for Massie & Morse against the railroad company he gave them, but later qualified this by saying that he did not give any papers to Mr. Norris or tell the attorney that he had a lease, and that he was present during the whole of the trial and gave testimony and heard the testimony given by Mr. Morse; also that

he never saw the timber deed and lease found in the office files of his attorney and never signed "Massie & Morse" to the lease of 1895, and that no such lease was ever taken by Massie & Morse so far as he knows.

It was incumbent upon defendants to show that the possession of Napoleon D. Massie was hostile in its inception and not under lease, or, if under lease, that the same had been repudiated and notice of such repudiation given in fact to the plaintiff. This issue was not met by the denial of Mr. Massie of knowledge of permission granted by the plaintiff to Massie & Morse to occupy the premises. If the jury may ignore a lease upon mere denial of defendant of knowledge thereof, then no one can rely upon even the most solemn instrument:

"And the older they would be, the more they would be at the mercy of the recollection or the dishonesty of the party executing them; * * * and we are compelled to say that if the judge had received the evidence and the jury had held the lease void, disregarding in doing so the evidence of subscribing witnesses, it would have been the plain duty of the judge to set the verdict aside as unwarranted." *Campau* v. *Lafferty*, 50 Mich. 114.

In that case the defendant sought to support his hostile holding by denying that he ever knowingly took a lease himself, and sought to show that the paper which was proved and which he admitted signing was represented to him at the time to be a paper representing some other lands.

The partnership between Massie & Morse made the lease of 1895, whether signed by Mr. Massie or by Mr. Morse for Massie & Morse, a permissive holding as to both Mr. Massie and Mr. Morse, and prevented the running of the statute of limitations against plaintiff and in favor of the possession of Massie & Morse or by Mr. Massie until such time as the possession

under the lease was expressly repudiated and notice of such repudiation and of possession hostile to plaintiff was brought to the actual notice of plaintiff. Constructive notice is not enough under such circumstances; actual notice must be shown.

"To transform a permissive use into an adverse one there must be a distinct and positive assertion of a right hostile to the rights of the owner, and such assertion must be brought to his attention. 14 Cyc. p. 1152." *Weber* v. *City of Detroit*, 159 Mich. 14 (36 L. R. A. [N. S.] 1056).

"It is settled law that a tenant or licensee cannot convert his occupancy under license into an adverse holding without actual notice to the holder of the legal title." *Standard* v. *Jewell*, 206 Mich. 61.

See, also, *Robertson* v. *Boylan*, 214 Mich. 27.

If Mr. Massie signed the lease of 1895, or if Mr. Morse signed it, and one or the other did sign for Massie & Morse, then the plaintiff was entitled to have the jury instructed that Mr. Massie's possession was permissive and not hostile, unless and until such permissive possession was repudiated by Mr. Massie and actual notice of a hostile holding was given to plaintiff. Here was no sleeping upon its rights by the county. It had leased the land to Massie & Morse, and it will not do now to permit Mr. Massie, Morse being dead, to sweep away his own act or the act of his copartner by the general statement that he did not know about the lease. But suppose it be admitted that Mr. Massie did not know of the lease in the firm name obtained and executed by his partner? The plaintiff knew of it and had a right to rely thereon, and Mr. Massie's claim of adverse possession thereafter is met by the wholesome rule that where two are in occupancy of land their holding is by permission and not adverse if either one of them has invoked and obtained permission from the owner for both.

If Mr. Massie believed that he had a deed and claimed under a deed given in 1889, and in 1895 became a lessee with his partner, Morse, he waived thereby all claim of possession adversely to the lessor. *Campau* v. *Lafferty, supra.*

When suit was brought against the railroad company by Massie & Morse, and they planted their right to recover damages to growing crops under lease from plaintiff, such suit was a recognition of the character of their holding wholly inconsistent with claim of possession adverse to the lessor.    It is true that a possession permissive in its inception may become adverse (*Ward* v. *Nestell*, 113 Mich. 185), and that in order to give a hostile character to a possession permissive in its inception, it is not necessary that the land should have been first surrendered to the owner (2 C. J. p. 134) ; but where possession is originally taken and held under the true owner, a clear, positive and continued disclaimer and disavowal of title and assertion of an adverse right brought home to the actual knowledge of the true owner are indispensable before any foundation can be laid for the operation of the statute of limitations.    2 C. J. p. 134.

"A mere permissive possession, or one consistent with the title of another, however long continued, can never ripen into a title by adverse possession."    *Township of Jasper* v. *Martin*, 161 Mich. 336.

The understanding among the neighbors that the land was owned by defendants and that the defendant Napoleon D. Massie had repeatedly made claim of ownership did not establish notice of a hostile possession brought home to the actual knowledge of the owner.

With an outstanding lease from the county to Massie & Morse the county had a right to rely upon their recognition of the relation of landlord and tenant and of a holding by both of them in subordination to its

title. And this would hold good until actual notice from them to the contrary. Such required notice of hostile holding under a permissive entry could not be predicated upon claim of ownership by Mr. Massie or understanding to such effect by neighbors or assessing officers, or the building of fences, clearing of land or payment of taxes; in fact nothing short of actual notice of hostile holding, coming to the owner; not by rumor or acts consistent or inconsistent with a tenancy, but by notice of clear and unequivocal repudiation of the continuance of the relation under which entry was made and an intent to hold against the consent of the owner.

The verdict rendered by the jury is so clearly against the weight of the evidence that the trial court should have granted the motion to set it aside.

In passing over the claimed error in the argument of counsel for defendants to the jury we are not to be understood as approving of the same.

The judgment below is reversed, and a new trial is granted, with costs of this court to the plaintiff.

STEERE, C. J., and MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.