79 N.J. Super. 106 (1963)
190 A.2d 680
THEODORUS BRON, ET AL., PLAINTIFFS-APPELLANTS,
v.
HARRY WEINTRAUB, ET AL., DEFENDANTS-RESPONDENTS. HUDSON TRADING CORPORATION, ET AL., PLAINTIFFS-RESPONDENTS,
v.
EMILE W. SAULNIER, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 1963.
Decided May 6, 1963.
*109 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Ernest F. Keer, Jr. argued the cause for appellants (Messrs. Boyd, Dodd, Keer & Booth, attorneys).
Mrs. Sylvia B. Pressler argued the cause for respondents.
The opinion of the court was delivered by FREUND, J.A.D.
Appellants appeal from a final judgment of the Superior Court, Chancery Division, requiring them to pay respondents, Hudson Trading Corporation (Hudson) and Frank Altomare, the value of the land upon which their homes are located determined as of January 1, 1960, or in the alternative, to remove the dwellings from the lands. The judgment also ordered appellants to pay mesne profits of 6% interest on the value of the land from January 1, 1960.
This appeal concerns two actions which were consolidated by order of the trial court. The action of the homeowners is to quiet the title to ten lots with the dwellings thereon and occupied by them in the Township of Woodbridge, N.J. (Woodbridge). The action of Hudson is an independent suit for possession of the lands and mesne profits.
On November 27, 1929 the land involved in the present proceeding  at that time vacant  was conveyed by two separate deeds from Danwil Developers, Inc. to El-Ka Holding Co., Inc. By deed of July 2, 1931 El-Ka Holding Co., Inc. conveyed the same land, together with other lands, to Harry Weintraub, the deed being recorded in the county clerk's office on July 23, 1931.
*110 In December 1935 the unimproved land was sold to the Township of Woodbridge for unpaid tax arrearages. The certificate of sale was recorded in the county clerk's office. Subsequently, Woodbridge instituted foreclosure proceedings in our former Chancery Court in respect to the tax sale certificate. The parties to the proceeding were Woodbridge as complainant and Danwil Developers, Inc. as defendant. Thereafter, final decree was entered on February 5, 1941 and recorded in the county clerk's office.
In October 1952 Woodbridge conveyed the land to Parkway Gardens, Inc. (Parkway). The land was subdivided and developed by Parkway, which constructed single-family houses and made other improvements throughout the tract of land, including the installation of water, streets and sewers. During 1953 and 1954 Parkway sold the homes it had constructed to the appellants, or their predecessors in title, for between $10,000 and $11,000 each. The purchasers of these houses acquired their title by bargain and sale deed. They failed to have any independent legal advice, nor were they aware of the outstanding title of Harry Weintraub. It is admitted that, when Woodbridge conveyed the land to Parkway, the grantee's title searcher inadvertently overlooked the fact of Weintraub's record ownership of appellants' lands in the 1935 tax foreclosure proceeding.
On March 8, 1959 one of the property owners, Victor Wansel and his wife, conveyed their property to plaintiffs Theodorus Bron and his wife. Examination of their title disclosed the omission in the foreclosure proceeding of the outstanding Weintraub title. At Wansel's request, Woodbridge instituted a strict foreclosure action, pursuant to N.J.S.A. 54:5-86.1, for the purpose of barring the outstanding interest and right of redemption of Weintraub, his unknown heirs, devisees and personal representatives. Final judgment was entered in October 1959 providing for the final date of redemption on November 13, 1959.
In the interim, Hudson located the surviving heirs of Weintraub and negotiated the acquisition of their interest for $400. *111 Weintraub had died on March 15, 1933, intestate and unmarried, leaving him surviving as his only heirs at law two sisters, Bessie Sachs and Rose King. By deed dated November 10, 1959 Bessie Sachs and her husband conveyed to Hudson her undivided one-half interest in all the land set forth in the complaints. Rose King died testate on June 5, 1959. William King, her husband, as executor and trustee with a power of sale under her last will and testament, conveyed to Hudson the remaining undivided one-half interest in the same land. On November 8, 1960 William King conveyed to Hudson his right of curtesy in the land in which his wife had an undivided one-half interest. On November 12, 1959 Hudson conveyed to Frank Altomare an undivided one-quarter interest in the property. As noted, Hudson and Altomare seek, in their action, possession of the land and mesne profits.
The trial judge awarded judgment in favor of Hudson and Frank Altomare and found that even though Hudson acquired title to the property with knowledge of the circumstances, its acquisition "was not wrongful as such." He ruled that Hudson was entitled to the enhancement in the value of the land which had taken place over the years, as well as the improvements made prior to Hudson's deeds. With respect to mesne profits, the trial judge determined that Hudson was not entitled to any substantial amount of money. Instead, he awarded interest from January 1, 1960 to the date of payment "in lieu of any specific amount for mesne profits."
Appellants urge that the judgment should be reversed because the trial court, in weighing the equities, improperly directed them to remove their buildings from the land or pay the 1960 value of the land. Alternatively, they argue that if estoppel may not be invoked against the original record owner and his heirs because they had no knowledge of ownership, it should be invoked against Hudson.
A tax sale certificate is not an absolute conveyance, since it creates nothing more than a lien on the premises sold. Nor does the tax sale divest the property owner of title. It merely gives the tax sale purchaser an inchoate right or interest, *112 subject to a statutory right of redemption. The owner of the property is barred and divested of title only by a statutory proceeding or by a strict foreclosure as provided by N.J.S.A. 54:5-19; 54:5-86.1, 86.2, and 86.3; 54:5-87. Chelsea Laundry Co. v. Toscano, 14 N.J. Super. 496, 500 (Ch. Div. 1951); Atlantic City v. Gardner, 124 N.J. Eq. 110, 112 (Ch. 1938).
When the equity of redemption is acquired from the owner of the fee, the purchaser succeeds to the title of the owner. Barry, Inc. v. BAF, Limited, 3 N.J. Super. 355, 363 (Ch. Div. 1949). Redemption means the repurchase of land sold for unpaid taxes. That right can be exercised only by the owner or other person having an interest in the land. R.S. 54:5-54; Atlantic City v. Gardner, supra, 124 N.J. Eq., at p. 112; Mitsch v. Owens, 82 N.J. Eq. 404, 405 (Ch. 1913). Hudson and Altomare, as owners of the legal title acquired from the Weintraub heirs in 1959-60, had the undoubted right to redeem at any time before the date fixed for redemption. Concededly, the 1941 foreclosure judgment barred only Danwil Developers, Inc. and did not bar Weintraub, who was not included as a party defendant in the foreclosure proceeding. Nordell v. Mantua Twp., 45 N.J. Super. 253, 258 (Ch. Div. 1957).
Appellants purchased their homes voluntarily. Unfortunately, they chose to assume the risk of proceeding without the benefit of counsel or a tax and title search.
The fact that respondents seized upon the opportunity to make a profit is not inherently inequitable merely because they may have known that appellants lived on the land. There is no proof of fraud or overreaching. In particular, there is no evidence of unconscionable dealings between respondents and Weintraub's sisters. The fact that $400 was the consideration paid for the outstanding title of Weintraub, the record owner of the land which is now of increased value, does not alone constitute an unconscionable bargain. When Weintraub's sisters were approached, respondents were without knowledge of whether or not the 1941 *113 foreclosure was a nullity. Respondents believed that the 1935 foreclosure was "possibly defective." They assumed the risk that the interest of Weintraub's sisters may have been worthless. There was no impediment to Hudson's acquisition of the outstanding title on or before the date of redemption. See Bernstein v. B.H.K. Realty Co., 147 A. 474 (E. & A. 1929), not officially reported. The alleged "inequitable conduct" which appellants charge to Hudson would be counter-balanced by their attempt to bar the Weintraub sisters' equity of redemption by means of the 1959 foreclosure, when they might have ascertained the heirs of Weintraub and negotiated with them for the Weintraub title.
Appellants argue that the trial judge should have offered appellants the alternative of selling their homes to Hudson. However, appellants were largely responsible for their unfortunate plight. They purchased without the benefit of legal advice, failed to have a title search, and failed to locate and negotiate with Weintraub's heirs. Appellants rely upon McKelway v. Armour, 10 N.J. Eq. 115 (Ch. 1854), which we find inapposite. There, claimant by mistake erected a dwelling house on the lands of defendant. In adjusting the equities the court determined that defendant, living in the vicinity, had knowledge of the erection of the building; therefore, defendant was given the option to purchase the improvements or to sell the land to complainant. In the present case neither Weintraub's heirs nor their successors knew of or acquiesced in the development of the land.
At oral argument counsel for the respective parties were requested to submit memoranda on the question of whether or not appellants should be granted a credit for the land taxes they paid during their occupancy up to and through January 1, 1960. We have examined the supplemental memoranda. Generally, the tax burden must follow the use, enjoyment and benefit of the premises. Appellants or their predecessors in title have had the uninterrupted use, benefits and enjoyment of the property, both land and buildings, to the exclusion of all others. They have enjoyed the *114 municipal services throughout these years. Properly, they should bear the tax burden, and a credit should not be allowed.
Affirmed.