97 N.J. Super. 406 (1967)
235 A.2d 219
SARAH A. MANNING, PLAINTIFF-RESPONDENT,
v.
JACOB S. KASDIN, RUTH KASDIN, DAVID MUSS AND ANABELL MUSS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 11, 1967.
Decided November 1, 1967.
*409 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Richard E. Friedman argued the cause for appellants (Messrs. Friedman, Grundman & Friedman, attorneys).
Mr. Stewart G. Pollock argued the cause for respondent (Messrs. Schenck, Price, Smith & King, attorneys; Mr. John J. Harper, on the brief).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Defendant Kasdin purchased a tax sale certificate from the Township of Randolph on behalf of defendant Muss December 30, 1958. On October 30, 1961 Kasdin instituted an action to foreclose the certificate, which covered property denominated on the municipal tax records as "Black River  28.8 acres  Block 7, Lot 6" and assessed to "unknown." A final judgment was entered by default in the foreclosure proceedings against "Unknown Owner" on April 23, 1962.
On January 13, 1965 plaintiff, claiming to be the owner of the property, brought the present action to vacate the foreclosure judgment on the grounds that she had a right to redeem the property and had been improperly omitted as a party defendant in the foreclosure action. Judge Waugh held in her favor and entered judgment in the Chancery Division declaring: (1) plaintiff and her late husband David M. Manning (who died April 12, 1959) were the holders of a two-thirds interest in Block 7, Lot 6 by virtue of a deed recorded September 11, 1957; (2) they continued *410 to hold that interest when defendants purchased the tax sale certificate; (3) that interest could have been ascertained by a reasonably diligent search of the premises in accordance with N.J.S.A. 54:5-91 and (4) plaintiff should have been named and served with process as a defendant in the foreclosure action. It was therefore adjudged that the judgment of foreclosure be vacated and that plaintiff should be permitted to redeem the lands from the tax sale certificate on the terms that she reimbursed defendants for the moneys they paid the township for taxes with 6% interest, and for their costs in obtaining title in the foreclosure action, plus reasonable search and counsel fees therein, but without costs to either party in the current action.
Defendant Muss now prosecutes this appeal alone. He is a civil engineer and surveyor, was formerly the engineer for Randolph Township, and prior to the foreclosure sale had been entrusted with revising the tax map for the municipality. Defendant's appellate brief framed his statement of questions involved and developed his argument on two basic points: (1) that plaintiff lacked the interest in the lands necessary for redemption because her paper title did not go back to the Proprietors and she failed to prove title by adverse possession; (2) plaintiff was estopped from claim of ownership because she or her husband had disclaimed ownership, thereby "inducing" Muss to acquire the property and expend funds on its improvement. There was only a tangential exception in that brief to the trial court's finding that plaintiff's interest in the property was ascertainable by the exercise of reasonable diligence by Muss and that she should accordingly have been joined in the tax foreclosure. However, since that determination was challenged in the reply brief and at oral argument (belatedly, we think), we shall lay the point at rest for the benefit of the bar.
Some further development of the facts is necessary.
*411 Two title experts testified on behalf of plaintiff. From their testimony and title records admitted in evidence the following appears. The record title interest of plaintiff and her husband (collectively referred to hereinafter as the Mannings) in the locus in quo derives from a deed to them recorded September 11, 1957 from George M. Harvey and others conveying a two-thirds interest in certain lands (the Mannings obtained the other one-third interest by subsequent deeds from various other holders thereof). Plaintiff's experts concluded, after an extended demonstration from and analysis of other title instruments, that the "Third Lot" mentioned in the 1957 deed from Harvey and Lot 6, Block 7 were "one and the same." The description in that deed of the "Third Lot" is by incorporation by reference of the description in a March 1832 deed from Gilbert Budd to John Corwin, and repeated verbatim in mesne deeds, but subject to an exception for a five acre tract conveyed out of the Third Lot by Isaac Corwin to Sylvester Harvey in 1884. The 1832 deed description does not read in terms of specified compass courses and fixed distances. The land is referred to as all of Budd's land "laying in the Swamp on the East side of Black river," and the description proceeds in terms of reference to the locations of lands of bounding property owners. The deed recites that the tract is "supposed to contain between three and four acres be the same more or less" (this estimate is apparently wrong as the 1884 conveyance out of the tract itself purports to encompass five acres). The description in the 1832 deed contains four calls to other lands of John Corwin, the grantee.
Distinct from the locus in quo, the Mannings on June 10, 1939 acquired by deed from Elizabeth Spingler a farm of some 60 acres and a farmhouse in which they resided most of the period of time since. That property is identified on the tax map as Lot 10, Block 6. It appears on the tax map directly east of and contiguous to Lot 6, Block 7, the property here in question. In the 1957 deed from Harvey *412 was also included a 16-acre tract identified on the tax map as Lot 7, Block 7. The Mannings had, however, been assessed for it since 1951. That parcel is north of and contiguous to Lot 10, Block 6 and east of and contiguous to Lot 6, Block 7. Plaintiff's expert Buck plotted the locations of these three tracts and other surrounding titles on his Exhibit P-16. Parcel A thereon is the main Manning homestead; Parcel C, the locus in quo; and Parcel B, the other tract conveyed to the Mannings by the 1957 deed. The three parcels constitute a contiguous assemblage bounded on the west by the Black River (Parcel C being westernmost). John Corwin was formerly a common holder of record title to all three parcels by deeds of grant in 1808 (Parcel A), 1815 (Parcel B) and 1832 (Parcel C).
It is of interest that the 1957 deed to the Mannings recites that it is made for the purpose of correcting an inadvertent omission by the grantors' ancestor, William Collis Harvey, in conveying in 1919 the present Manning homestead to Godin, Fox and Dropkin, to have included what is referred to above as Parcels C and B.
No deed into Gilbert Budd for the property he conveyed to Corwin in 1832 has been adduced. Defendant testified to an extensive investigation which he made purporting to show that the property in question was never conveyed out by the Proprietors. He testified further that although he knew, before he foreclosed the tax certificate, of the 1957 deed to the Mannings and the chain back to the 1832 deed from Budd, he could never locate the "Third Lot" mentioned in the 1957 deed.
Two roads depicted on a survey in evidence extend from Parcels A and B to Parcel C (identified above). A 68-year-old farmer who has lived all his life near the Manning farm testified that when the Harveys[1] owned the farm they used those roads in connection with their farming the land on the *413 locus in quo. They had maintained a field for grass and other products on the knoll located thereon, had a sand pit near there from which they hauled out and sold sand, and they hauled hay and grain which they raised there and "logged the woods." This witness was familiar with the Manning (Harvey) farm as extending to the Black River. He also testified that the Spinglers, who owned the farm from 1922 to the time the Mannings acquired it, also farmed the knoll on the locus in quo.
David Manning, son of the Mannings, testified that he and his parents planted about 1,000 Christmas trees on the knoll mentioned above and took some wood from the property. That area was also used by them for hunting and was posted against hunting by trespassers, the posts reading "D.M. Manning, owner." He testified, over objection, that his father had told him the property extended to the river.

I
By virtue of N.J.S.A. 54:5-90 a judgment in tax foreclosure against unknown owners is after five years precluded from attack on the ground of insufficient inquiry for the identity of any defendant "even though the same might have been ascertained by such inquiry." That bar does not apply to plaintiff as she brought this action within five years of the tax foreclosure judgment. As a matter of law, plaintiff should have been joined as a defendant in the foreclosure unless she was at the time an "unknown owner," within the definition of that term in N.J.S.A. 54:5-91, which reads as follows:
"Any person whose interest in the lands cannot, in the exercise of reasonable diligence, be ascertained from the search of the title of the premises described in the certificate of sale, made of the indexes in the office of the surrogate and county clerk or register of deeds and mortgages in the county in which the lands are situate, and in the office of the Secretary of State, extending back at least sixty years next preceding the date of the sale, shall be deemed to be included in the term `unknown owner' or `unknown claimant.'"
*414 Judge Waugh found that plaintiff was not an unknown owner, as so defined, and we agree. It is common knowledge among title lawyers that the seeker after the holder of title for a parcel of property for which no deed or other identification is readily available will, as one of several devices, trace the chains of title of owners of surrounding properties on the theory of former assemblage of large tracts in a common predecessor in title. A search of the Mannings' name in the grantee indices would of course disclose the 1957 deed and the chain of title antecedent thereto. Muss, in fact, knew of that chain. We are fully satisfied that for the reasons given in evidence by plaintiff's expert witnesses, which we need not here detail, and found convincing by the trial judge, Muss should have known (assuming, as he testified, that he did not know) that the land conveyed by the 1832 deed from Budd and designated as the Third Lot in the 1957 deed to the Mannings was the same property as Lot 6, Block 7. It follows that plaintiff's interest in Lot 6, Block 7 was one which could have been ascertained by the exercise of reasonable diligence by or on behalf of defendant. She should have been joined as party defendant to the foreclosure. N.J.S.A. 54:5-86.3.

II
The gravamen of this appeal is the argument that assuming Lot 6, Block 7 is covered by the 1832 and 1957 deeds aforementioned, those deeds did not transmit an ownership interest to the Mannings because Budd, who originated the chain of title in 1832, had no grant into him for the property. Defendant also argues that the evidence does not clearly establish a continuous, hostile period of adverse possession by the Mannings and their predecessors sufficient to confer title by adverse possession. We hold that conceding arguendo that the evidence before the court does not technically establish title by adverse possession, as such, or any paper title back of Budd, the Mannings nevertheless *415 possessed prima facie title adequate to found a right of redemption as against a tax certificate purchaser.
Under N.J.S.A. 54:5-54 timely redemption may be exercised by "[t]he owner, mortgagee, occupant or other person having an interest" in the land. The core question presented by defendant's argument is as to how perfect a title must be shown by one who asserts the right to redeem as an owner. In effect, defendant's contention is that a purported owner seeking redemption must show paper title back to the Proprietors, or, failing that, either strict adverse possession in the statutory sense for the requisite period or record title back to a holder by such adverse possession. Defendant cites no authority which in our view justifies any such conclusion.
Both sides cite and rely upon the opinion of Vice-Chancellor Leaming in Wills v. Windish, 106 N.J. Eq. 449 (Ch. 1930), wherein a holder of the paper title without possession sought redemption as against a tax sale certificate holder. The court upheld the right of redemption because the certificate holder had also preceded the plaintiff in her chain of title and was therefore deemed estopped to challenge her assertion of title. But in the course of its opinion the court implied that the title required to be established by the intending redeemer was such prima facie title as must be shown by a plaintiff in ejectment.[2] Citing Troth v. Smith, 68 N.J.L. 36 (Sup. Ct. 1902), and Rollins v. Atlantic City R.R. Co., 70 N.J.L. 664 (E. & A. 1904), the court stated that requirement as follows:
"[T]o establish a prima facie title to real estate a plaintiff in an action of ejectment who seeks to recover on a mere paper title must trace his paper title back to someone who is shown to have been in possession of the locus in quo, or, failing in that, must trace his paper title back to the council of proprietors." (at p. 451, of 106 N.J. Eq.)
*416 It is clear in the present case that plaintiff has shown a prima facie title within the foregoing formulation. She has both paper title from predecessors who exercised possession (whether or not of a quality sufficient to constitute adverse possession for the statutory period) and the status of one who has been in possession (through her late husband). To this defendant responds that while plaintiff may have prima facie title, that title is rebutted by the fact that the chain of title does not antedate the 1832 deed from Budd, and therefore title continues to reside in the Proprietors.
No case precisely in point has been cited to us in a tax certificate redemption context. However, if the ejectment analogy is correctly espoused by defendant, he would appear defeated by the holding in Licari v. Carr, 84 N.J.L. 345 (E. & A. 1913). That was an ejectment action (now an action for possession of lands) wherein defendant's claim by adverse possession was not established by the preponderance of the evidence. But on appeal defendant attacked the sufficiency of plaintiff's prima facie title, as does the present defendant, by contending that plaintiff's "record title * * * failed" because his chain of title, terminating with his deed of 1909, began in 1834 with no prior chain traceable back to the proprietors. The court held it sufficient that the plaintiff's title rested upon a paper title of over a half century together with possession of the property by himself and his ancestors under color thereof.
We need not here decide whether the ownership interest advanced to support a claim of redemption must be based upon a title as good as the prima facie title required of a plaintiff in an action for possession of lands, but if it must, Licari is dispositive against defendant. We have no doubt that plaintiff's chain of title of 130 years, coupled with the possessory activity of at least some of her predecessors in title, gives her the status of an "owner" entitled to redeem, within the reasonably inferable meaning of the term "owner" in N.J.S.A. 54:5-54.
*417 The foregoing conclusion would seem to be further supported by the apparent general assumption that a 60-year title search assures prima facie title. 13A N.J. Practice (Lieberman, Abstracts and Titles) (3d ed. 1966), § 1643, pp. 139-141; and see the requirement for a 60-year search in N.J.S.A. 54:5-91, quoted above.
If plaintiff has shown a prima facie title sufficient to support redemption, as we think she has, defendant's status as a tax certificate purchaser is subordinate thereto. A tax sale certificate merely conveys the lien interest of the taxing district. It embodies an inchoate interest entirely subject and subordinate to the statutory right of redemption by holders of an interest in the property before it can ripen into a fee by foreclosure of the right of redemption. Bron v. Weintraub, 79 N.J. Super. 106, 111-112 (App. Div. 1963), reversed on other grounds, 42 N.J. 87 (1964).
We conclude the Chancery Division was right in holding that plaintiff was vested with title adequate to permit her to redeem.

III
Defendant's claim of estoppel is founded on his testimony that he and Manning contested in bidding for the certificate at the tax sale and that Manning had told him, on inquiry before the sale, that he did not know who the owner was. Manning expressed concern when defendant outbid him because he wanted to own westward to the Black River. Thereafter defendant purchased a right of way to the property, which was landlocked, and made test borings and preliminary development plans while Manning assertedly "acquiesced" in silence.
The trial court failed to find any basis for an equitable estoppel against plaintiff, nor do we. Defendant was not relying upon anything said to him by Manning in deciding to bid for the certificate at the tax sale. He undoubtedly regarded the purchase as a good investment. There is no substantial basis to conclude that he omitted the Mannings as *418 defendants in the foreclosure because of anything said to him by Manning. He was undoubtedly thoroughly familiar with the property and its tax status by reason of his former position as township engineer and his revision of the tax map.
This case does not present any occasion for special application of the statutory direction of liberal construction of the tax foreclosure statute to encourage the barring of rights of redemption. N.J.S.A. 54:5-85. Cf. Bron v. Weintraub, supra (42 N.J., at pp. 91-92). There is here to be considered the contrasting principle that the right of redemption from tax foreclosure is to be liberally construed. Lake Waterloo Corp. v. Kestenbaum, 10 N.J. 525 (1952).
Plaintiff's motion to compel defendant to defray the cost of printing her appendix is denied.
Judgment affirmed; no costs.
NOTES
[1] William Collis Harvey owned Parcels A, B and C from 1896 to 1919.
[2] Now an action for possession of lands. N.J.S. 2A:35-1 to 3; R.R. 4:79.