LILIAS I. DAVIS v. DELOS L. FILER, JOHN CANFIELD AND RICHARD G. PETERS.

*Swamp lands—Act 166 of 1855—Title held in trust—Costs.*

The State cannot prescribe rules for officers of the general government; as by requiring that a certificate of the cancellation of a patent must be signed by a particular officer.

In providing for the entry of swamp lands on presentation of a certificate of cancellation signed by the register of the federal land office, act 166 of 1855 merely provides for official evidence, and does not prescribe who must sign the certificate.

Where the United States had canceled patents to swamp lands on the ground that they were covered by a grant to the State, act 166 of 1855 gave the patentees or their heirs the right to enter these lands at any time before they were put up for sale. A claim for certain lands was entered accordingly at the State Land Office, but before the transfer from the United States to the State had been completed, the claimant died. Immediately upon the completion of the transfer, certain other parties who knew of the claimant's equities and had obtained quit-claims from some of his heirs, took patents to themselves, claiming under the act. *Held* that those who had notice of the claimant's rights took the title in trust for themselves and their co-tenants, the remaining heirs, and it was decreed that they convey to the latter an unencumbered title to their proportion.

Tenants in common are entitled to possession.

Where a decree dismissing a bill is affirmed as to one of the defendants, he receives costs, though it is reversed as to the rest.

Appeal from Manistee. Submitted January 17, 21 and 22. Decided January 31.

BILL to establish a trust estate. Complainant appeals.

*Morris & Nelson* and *C. I. Walker* for complainant appellant. A title is not valid if acquired from the government contrary to conditions imposed by law (*Attorney General v. Smith*, 31 Mich., 359; *Attorney General v. Thomas*, 31 Mich., 365; *Remeau v. Mills*, 24 Mich., 15; *Hunter v. Hemphill*, 6 Mo., 106; *Smith v. Vasbinder*, 77 Penn. St., 127; *Bronson v. Kukuk*, 3 Dill., 490; *Bisson v. Curry*, 35 Ia., 72; *Sherman v. Buick*, 93 U. S., 209; *Patterson v. Tatum*, 3 Sawyer, 164; *Matthews v. Rector*, 24 Ohio St., 439), such as that the lands shall not already have been disposed of by the government, or that the equitable title shall not already have vested in a third person, *Stockton v. Williams*, Walk. Ch., 120; *Stockton v. Williams*, 1 Doug. (Mich.), 546; *Boyce v. Danz*, 29 Mich., 146; *Dale v. Turner*, 34 Mich., 405; *Campau v. Dewey*, 9 Mich., 381; *Stoddard v. Chambers*, 2 How., 284, 318; *Mills v. Stoddard*, 8 How., 345; *Delauriere v. Emison*, 15 How., 525; *City of New Orleans v. DeArmas*, 9 Pet., 223; *Green v. Brennesholtz*, 73 Penn. St., 423; *Goldsbee v. Fordham*, 49 Ala., 202. Subsequent purchasers are bound by constructive notice, furnished by the registry of prior conveyances (*Vaughan v. Greer*, 38 Tex., 530; *Iglehart v. Crane*, 42 Ill., 260; *White v. Kibby*, 42 Ill., 510; *Morrison v. Kelly*, 22 Ill., 610; *Bayles v. Young*, 51 Ill., 127; *Mason v. Payne*, Walk. Ch., 459; *Fitzhugh v. Barnard*, 12 Mich., 104), or by facts or circumstances sufficient to put them on inquiry, *Oliver v. Piatt*, 3 How., 333; *Cox v. Milner*, 23 Ill., 476; *Scott v. Moore*, 3 Scam., 306; *Rupert v. Mark*, 15 Ill., 540; *Worden v. Williams*, 24 Ill., 67; *Bayles v. Young*, 51 Ill., 127; *Willcox v. Hill*, 11 Mich., 256; *Hosley v. Holmes*, 27 Mich., 417; *Stetson v. Cook*, 39 Mich. One cannot set up a title against his co-tenant if his grantor could not, *Dubois v. Campau*, 24 Mich., 360; *Jackson v. Bush*, 10 Johns., 222; *Cook v. Travis*, 20 N. Y., 400; *Jackson v. Scott*, 18 Johns., 94; *Arnot v. Beadle*, Lalor's Sup. to Hill & Denio, 181; *Jack-*

son v. Hinman, 10 Johns., 292; Jackson v. Parker, 9 Cow.,
73.   One who obtains for himself by fraud, imposition,
oppression or undue advantage, a conveyance of land
that rightfully belongs to another, equity regards as a
trustee, and he may be compelled to account or con-
vey as trustee, Adams v. Bradley, 12 Mich., 346; Edwards
v. Hulbert, Walk. Ch., 54; Smith v. Wright, 49 Ill., 403;
Hunter v. Aylworth, 38 Iowa, 211; Armour v. Alexander,
10 Paige, 571; Brown v. Lynch, 1 Paige, 147; Fisher v.
Fields, 10 Johns., 495; Tiff & Ball on Trusts, tit. Implied
Trusts, ch. 2, p. 193; Mulvaney v. Dillon, 1 B. & B., 409;
Moore v. Moore, 1 Seld., 256; Reed v. Norris, 2 Myl. &
Craig, 361-374; Sweet v. Jacocks, 6 Paige, 363; Morey v.
Herrick, 18 Penn. St., 123; Hoge v. Hoge, 1 Watts, 163;
Gardner v. Ogden, 22 N. Y., 327; a cestui que trust may
affirm and enforce a trust created without his knowledge,
Corse v. Leggett, 25 Barb., 392; Neilson v. Blight, 1 John.
Cas. 205; Lawrence v. Fox, 20 N. Y., 268; Gridley v. Grid-
ley, 24 N. Y., 130; Lowery v. Steward, 25 N. Y., 239; 4
Kent's Com., 307.   A court of equity will in a proper
case adjudge a patentee of lands to hold as trustee for one
having greater rights, Johnson v. Towsley, 13 Wall., 72;
Bisson v. Curry, 35 Ia., 72; Smith v. Vasbinder, 77 Penn.
St., 127; Hedley v. Leonard, 35 Mich., 71; Bagnell v. Brod-
erick, 13 Pet., 436; Minter v. Crommelin, 18 How., 87; Gar-
land v. Wynn, 20 How., 8; Lytle v. Arkansas, 22 How.,
193; Clements v. Warner, 24 How., 394; Lindsey v. Hawes,
2 Black, 559; Stark v. Starrs, 6 Wall., 402; Johnson v.
Towsley, 13 Wall., 72; Frisbie v. Whitney, 9 Wall., 196.
The cestui que trust can follow the trust property into
the hands of one not a bona fide purchaser for value
without notice, and the purchaser who has notice of the
trust at the time of his purchase becomes himself a
trustee, notwithstanding the consideration he has paid,
Oliver v. Piatt, 3 How., 333; Gilman v. Hamilton, 16 Ill.,
231; Fisher v. Fields, 10 Johns., 495; Murray v. Ballou,
1 Johns. Ch., 566; Shepherd v. McEvers, 4 Johns. Ch.,
136.

*Ramsdell & Benedict* and *Bullis & Cutcheon* for defendants and appellees, cited as to the diligence required in bringing suit to establish rights in land, *Campau v. Van Dyke*, 15 Mich., 380; *Russell v. Miller*, 26 Mich., 21; *Craig v. Bradley*, 26 Mich., 369; *Miller v. Aldrich*, 31 Mich., 409; *Letcher v. Woodson*, 1 Brock, 212; *McVickar v. Filer*, 31 Mich., 308; *Ford v. Loomis*, 33 Mich., 122; *Graydon v. Church*, 7 Mich., 68.

CAMPBELL, C. J. Complainant as heir-at-law of one-tenth and grantee of three-tenths of her grandfather Joseph Smith's estate, filed her bill to establish a trust in her favor in certain lands in Manistee county, known as lots 6 and 10 of section 6 in township 21 north of range 16 west, and lot 1 of section 1 in township 21 north of range 17 west, which she claims were obtained by Filer and Edmund and John Canfield to be patented to them by the State land office under a claim belonging to Joseph Smith's estate which they set up as belonging to them. John Canfield as grantee of his brother Edmund holds lot 1; and Peters holds lot 10 by *mesne* conveyances derived from Filer. The bill was dismissed below, and she appeals.

Joseph Smith in March, 1851, entered these lands and paid for them at the U. S. land office in Ionia. They turned out to be within the condition of swamp lands set apart for the State of Michigan. On the 11th of May, 1853, the commissioner of the general land office informed the land officers at Ionia that those entries with many others were illegal on that account, and directed them to notify the parties interested to apply to have their purchase money refunded.

On the 19th of November, 1856, Joseph Smith received back his money with a certificate of cancellation from the receiver of the Ionia land office, and on the 11th of December, 1856, made his claim to secure the lands at the State land office, depositing his certificate and the amount to pay for the lands at $1.25 per acre, and tak-

40 MICH.—40.

ing the commissioner's certificate and receipt. The claim was recorded in the books and entered on the maps.

The act then in force (Act 166 of Laws of 1855) provided that where such land purchases from the United States had been canceled as covering swamp lands, the purchaser, his heirs or assigns might at any time before the lands were offered for sale by the State or purchased by any one else, be entitled to purchase them at $1.25 per acre on presentation of a certificate of such purchase and cancellation from the register of the land office where such purchase was made. An objection is made in this case that the receiver's certificate does not satisfy the law.

It appears from the public documents in this cause that the cancellation is made by the office at Washington, and that the action of the local land officers is merely in obedience to the orders of the commissioner. It is not competent for the State to lay down rules for the government of those officers, and we cannot suppose that this statute was intended to make the protection of the purchaser whose lands were involved to depend on the technicality that his certificate must come from one land officer instead of the other, when no State court could compel either to issue it. We must assume it was only intended to provide for official evidence from the United States land office, and not to prescribe who should sign it. We do not think there is any force in this objection; and the State land office made no objection when the certificate was presented there, but received and acted on it as sufficient.

The laws of the State did not allow these lands to be finally disposed of before patents were issued to the State. The patents were not received for these lands until February, 1867. We think it appears that they had never been offered for sale when they were patented to Filer and the Canfields on the 28th of March, 1867.

At that time Joseph Smith had been dead several

years. Filer and the Canfields knew of his original purchase and its cancellation, and knew of the privileges given by the act of 1855 to such purchasers, their heirs. and assigns.

Joseph Smith left two sons, Augustus E. Smith and Luther G. Smith, and two daughters, Nancy Bagley— now Nancy Rounds—and Violetta Sherwood. Complainant and her brother George Ford, who has quit-claimed to her, were children of another deceased daughter. Complainant holds the title of Luther G. Smith from his assignee.

Filer procured quit-claims from Augustus E. Smith in August, 1861, from Mrs. Sherwood in August, 1866, and from Mrs. Bagley in May, 1864. He claimed to have an execution title against Luther Smith, but has not proved it, and this need not be regarded.

In January, 1867, Filer quit-claimed lot number 1 to the Canfields, and had previously asserted a right of some kind in the whole lands, subsequent to his first purchase from Augustus Smith. He also paid taxes on them, although the lands were not then legally taxable.

These lands which had been purchased by private parties from the United States after they had become subject to the rights of the State as swamp lands, were marked with a peculiar mark on the State land office maps, and were known as "*green lands.*" Filer and the Canfields knew these lands were green lands. They knew that Smith's heirs had a right to obtain them from the State before they were offered at public sale, and that no one else except their assignees could do so.

Filer tried to get quit-claims from all the heirs, but got none from Luther Smith, and the two Fords were under age. He went to Washington in advance of the patents issuing to the State to see if he could get them, but found he could not. He then kept watch of the issue of the patents by inquiry at the land office, and within a very short time after these patents issued he applied for and obtained patents to himself of two of the

lots and to the Canfields of the other,—not as lands which were open to public sale, but under the act of 1855. The only right they could possibly have had under that act was in the right of Joseph Smith or his heirs. The deeds from the heirs were found on file in the State Land Office, and we have no doubt the purchase was made under the assertion of that claim. Whether the money deposited by Joseph Smith was used as purchase is not entirely clear.

Under these circumstances it needs no discussion of authorities to show that these patentees took the title in trust for themselves and their co-tenants, the heirs who did not sell. Having done this the analogies of common law leave the trust in force unless equities have arisen which would estop the beneficiaries from enforcing it.

Filer has made no showing of any such equities. There are no facts presented which would give him any right to set up a better claim to the lot he still holds from what he had originally.

The same is true as to Canfield. He was affected originally with notice before he bought out his brother. Whether the money to pay for their lot was paid by Filer as the land office entries show, or was advanced by themselves, or was taken from Smith's deposite, the sum was trifling and was paid in their own wrong except for the three-fifths interest which had been quit-claimed by the heirs.

The delay has not damnified any of them. The interest of Peters is different. He bought lot 10 from grantors whose title was conveyed by Filer in 1870. We find nothing in the record to satisfy us that he had notice of the rights of complainant or her grantors. We think his title must stand.

As no demand has ever been made of Filer or the Canfields for an accounting, we think there is no sufficient showing to call them to an accounting now for the use of the land, which as tenants in common they might lawfully possess. *Everts v. Beach*, 31 Mich., 136. The

claim for purchase money of the sale of the parcel now held by Peters accrued more than six years before suit, and is barred by lapse of time.

The decree dismissing the bill as to Peters must be affirmed with costs to him.

The decree as to the other defendants must be reversed and a decree entered requiring the defendants Filer and Canfield to convey to Mrs. Davis a good and unencumbered title to two-fifths of the lots held by them respectively as set forth in the bill, and declaring their original grants from the State to have been made in trust as above mentioned. Complainant to recover costs of both courts.

The other Justices concurred.