LODEMA DRAGOO v. BARBARA A. DRAGOO ET AL.

*Specific performance of parol agreement to convey land—Laches.*

Laches in filing a bill to establish his rights is not imputable to a minor or to any person incompetent to act on his own behalf.

A parol agreement for the conveyance of lands should never be enforced in equity, unless it is satisfactorily proved ; and as time destroys evidence, great delay in filing a bill for the specific performance of such an agreement, even if the delay is excused, will necessitate a close scrutiny of the proofs.

A bill for the specific performance of a parol agreement to convey land can hardly be maintained where it is not filed for twenty-five years after the alleged agreement was made, unless the complainant was unable to assert his claim before;. and the neglect of near relations to aid a minor in the assertion of such claims, is a circumstance entitled to consideration, where there is no pretense that they were in collusion with the other party.

Complainant's case is not made out where the evidence is as consistent with defendant's theory as with complainant's.

Specific performance cannot be granted on the basis of a parol contract, unless there have been important acts of part performance, raising a strong equity in complainant's favor.

Appeal from Berrien. (A. J. Smith, J.) Apr. 27.—June 6.

SPECIFIC PERFORMANCE.    Defendants appeal.    Reversed.

*Edward Bacon* for complainant.

*Emory M. Plimpton, H. H. Coolidge* and *O. W. Coolidge* for defendants.    Specific performance is not of right, and will be refused where inequitable: *Munch v. Shabel* 37 Mich. 173; *Chambers v. Livermore* 15 Mich. 387; *Smith v. Lawrence* id. 500; *Rust v. Conrad* 47 Mich. 654; the consideration for the contract and its payment are essential: *Purcell v. Miner* 4 Wal. 513; *Wright v. Wright* 31 Mich. 381.

COOLEY, J.    The purpose of this suit is to enforce an alleged oral agreement for the partition and conveyance of lands.

The parties to the agreement were John F. Dragoo and Peter Dragoo his brother, sons of Jacob Dragoo, who died intestate in Berrien county in the year 1838, leaving seven children and one grandchild.    He left a very small property, and John F. Dragoo was appointed administrator.    The estate was settled without complaint, though there seems to be some dispute respecting the method of settlement; the complainant alleging that John F. and Peter purchased the interest of the others and took the property.    In the year 1839, three parcels of land, aggregating about one hundred and forty acres, were purchased and conveyed to John.    The theory of the bill is, that the purchase was made by John and Peter jointly, and that in or about the year 1847 an agreement was made between the brothers that the land should be divided between them by a certain line represented in part by an existing fence, and that John, who held the title for both, should convey the north half to Peter. This is denied by the defendants.    It seems highly probable, however, that there had been an understanding between these brothers which contemplated their occupying, improving and owning the land jointly, and bearing jointly the expense of caring for and supporting the other children, who were nearly all minors; but what the conditions of

this understanding were, is not very clear. John at the time of the supposed understanding was a man of family, and lived upon the land. Peter was a bachelor, but in the year 1848, he was married to a woman who had a farm a few miles from the land in controversy, and went to live upon it. He died within a year thereafter, and John and the widow were appointed administrators and settled the estate by regular proceedings.

When Peter went to live upon his wife's farm the two brothers divided between them the personal property, and defendants claim that whatever understanding had previously existed for a joint ownership or for a partition of the land was then abandoned. This is denied by complainant, and upon this claim and denial all the controversy turns. It is certain that with the exception of a parcel in respect to which no question now arises, John always treated the land as his own, selling off some parcels of it, and cultivating the remainder in his own interest, and that what remained unsold at his death has since been claimed, and occupied and used by his heirs. John died in the year 1861, and in the year 1871 complainant, who was a posthumous child and is sole heir-at-law of Peter, filed this bill against the heirs of John to compel specific performance of the alleged agreement.

The circumstance that first attracts attention is, that the bill is filed to set up and enforce a parol agreement for the conveyance of lands nearly a quarter of a century after it is said to have been made. In most cases this would be a conclusive objection to the relief prayed. But the delay is excused in this case by the fact that complainant only reached her majority the year before the bill was filed, and may never have become fully aware of her rights before that time. Laches is not to be imputed to a minor or other person incompetent to act on his own behalf. *Smell v. Dee* 2 Salk. 415; *Mills v. Dennis* 3 Johns. Ch. 367; *Dow v. Jewell* 21 N. H. 470; *Chandler v. McKinney* 6 Mich. 217. Still, great delay is always an important fact in these cases; for time obscures and destroys evidence even when it does

not absolutely take away rights of action ; and a parol con-
tract is never to be enforced unless it is satisfactorily proved.
And the older the supposed facts are, when they are to be
made out on the recollection of witnesses, the more are they
open to doubt and suspicion; so that if the delay is suffi-
ciently excused the evidence that is to establish the case
requires to be examined with unusual care and circumspec-
tion.

But in this case if the facts are as complainant says, it is
remarkable that no one made claim on her behalf during
the period of her legal minority. When her father died
her mother survived, and there is every reason to suppose
that, whatever the facts were, she was cognizant of them.
Yet she took no steps to assert any claim on behalf of com-
plainant; and the relatives of complainant on her mother's
side, several of whom lived near them, were equally neglect-
ful of her interests. There is no pretence of collusion by
them with the surviving brother to deprive the orphan of
any property belonging to her, or of any disposition to
refuse assistance in the enforcement of her rights ; and the
neglect to show some interest in her behalf during the long
period of her minority, if they believed she was unjustly
excluded from her inheritance, is, to say the least, an un-
usual circumstance and noticeable as such.

But if the evidence concerned recent transactions, instead
of dealings which took place thirty years before the proofs
in the case were taken, we should be compelled to say that
it was too vague, uncertain, ambiguous and unsatisfactory
to justify the overturning of titles in reliance upon it.

It the first place the alleged contract must be made out,
if at all, on the admissions of John F. Dragoo, made for
the most part in casual conversations with his neighbors.
No one pretends to have been present when any bargain
between the brothers was made, no one claims to have heard
the terms and conditions of any understanding deliberately
talked over between them. If the supposed contract was
ever made, witnesses were never called to it, and knowledge
of its existence only came to others casually and as it were

by accident. But this supposed contract related to nearly all these parties had ; it concerned the estate they were cultivating and improving for their home. We can understand how Peter under the circumstances alleged might have left the title to his share in the hands of his older brother, but that he should have failed to provide himself with any evidence of his rights which would be available in the event that death or other casualty interfered with their plans, is remarkable. It is not claimed that there was intentional secrecy, or reason for any; so that we are to suppose the brothers took no pains whatever to provide for the ordinary contingencies of life, so far as their arrangement might be affected by them. And in his last days it does not appear that Peter took any steps to secure to his wife and his expected child any interest in the land which he had left in John's possession.

But again : the evidence adduced on the part of complainant is as consistent with a temporary arrangement which was abandoned when Peter went to live on his wife's farm, as with one which was permanent and contemplated a final division notwithstanding their separation. In other words, it is as consistent with the theory of the defendant as with that of complainant. This is as much as to say that the case of complainant is not made out.

But the difficulties with the case do not end here. No court can grant specific relief on the basis of a parol contract unless there have been important acts of part performance which raise in favor of complainant a strong equity. No such acts are shown in this case. There was joint occupancy and improvement for a short time, but the joint expenditure of either labor or money was small, and there is little if any reason to suppose that Peter Dragoo made any change in his business affairs or abstained from making any because of the supposed contract. And the joint occupation and improvement, which, if anything, must be considered acts of part performance, were discontinued as soon as Peter married.

The supposed contract was also vague in respect to the

line of partition, and it would be difficult to satisfy ourselves, if we were guided exclusively by complainant's evidence, where the line should be made out. But it is unnecessary to point out other difficulties in the case. It is enough to say that we do not find in it those circumstances which justify setting aside the titles to land and compelling their conveyance in supposed conformity to parol agreements.

The decree appealed from should be set aside and decree entered for defendants with costs of both courts.

GRAVES, C. J. and CAMPBELL, J. concurred.