TAYLOR *v.* S. S. KRESGE COMPANY.

1. PARTITION—LEGAL TITLE—WAIVER.

Where a proceeding is only colorably one for partition, and the true purpose is to obtain a determination of rights respecting title and possession, normally determinable at law, where transfer to law is not raised by pleadings nor sought in the trial court, such failure is deemed a waiver sufficient to justify an appellate court in declining to require a determination as to legal title before permitting court of equity to decree partition with attendant delay.

2. EQUITY—JURISDICTION—PARTITION—ACCOUNTING.

Where court of equity is only forum in which plaintiff could get relief by way of partition of real estate and accounting, as sought in his bill of complaint against defendant cotenant and issue of jurisdiction of equity court was not raised in the pleadings nor in the trial court and defendant in its answer asked that title be quieted in it, the trial court in chancery had jurisdiction of the subject matter and the parties.

3. TENANCY IN COMMON—SOLE POSSESSION OF COTENANT.

As among cotenants there is no ouster by sole possession of one of the tenants.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur, Partition, § 30.
[1, 2] 3 Am Jur, Appeal and Error, §§ 246, 307, 820.
[2] 40 Am Jur, Partition, § 59.
[3] 1 Am Jur, Adverse Possession, § 52; 14 Am Jur, Cotenancy, §§ 22–24, 73.
[4, 5] 1 Am Jur, Adverse Possession, §§ 50–54, 56, 237, 238, 247; 14 Am Jur, Cotenancy, § 103.
[7, 8] 1 Am Jur, Adverse Possession, §§ 50, 52, 56, 137, 188.
[10, 12] 19 Am Jur, Equity, §§ 499–501, 508.
[11, 12] 19 Am Jur, Equity, § 507.
[12] 40 Am Jur, Partition, § 29.

4. SAME—ADVERSE POSSESSION BY COTENANT—NOTICE—EVIDENCE.

Before a tenant in common may acquire a title against his cotenant by adverse possession the proofs must be clear and cogent, a case cannot be made out by inference, and the exclusive claim must be brought home to the knowledge of the cotenant, either by express notice or by implication, and if the latter, doubt growing out of the nature and character thereof should be against an ouster.

5. SAME—POSSESSION BY ONE COTENANT—PRESUMPTIONS.

The presumption should be that the cotenant in possession respects and recognizes the rights of his cotenants, until the contrary clearly appears; that the possession is rightful, and not to the exclusion of others having equal rights.

6. ADVERSE POSSESSION—PERMISSIVE USE—NOTICE TO OWNER.

To transfer a permissive use into an adverse one there must be a distinct and positive assertion of a right hostile to the rights of the owner, and such assertion must be brought to his attention.

7. SAME—NOTICE TO TRUE OWNER.

Where possession is originally taken and held under the true owner, a clear, positive and continued disclaimer and disavowal of title and assertion of an adverse right brought home to the actual knowledge of the true owner are indispensable before any foundation can be laid for the operation of the statute of limitations.

8. SAME—NOTICE TO COTENANT.

Affirmative defense of adverse possession is not applicable to corporate cotenant who recognized plaintiff's interest when it went into possession and never gave plaintiff notice of claiming exclusive ownership.

9. EQUITY—PROTECTION OF VESTED LEGAL RIGHT—LACHES—RECORD TITLE.

Where plaintiff comes into equity for the protection of a vested legal right, the doctrine of laches has little, if any, application, especially where the title is of record.

10. SAME—DOCTRINE OF LACHES—APPLICATION.

The doctrine of laches is founded upon long inaction to assert a right, attended by such intermediate change of conditions as renders it inequitable to enforce the right.

11. SAME—LACHES—INFANTS.

Laches does not run against an infant.

12. SAME—MINORS—LACHES—TENANCY IN COMMON.
    Fact that cotenant minor waited over 18 years after reaching
    majority before asserting claim against cotenant corporation
    in possession by way of suit for partition and accounting and
    after witnesses have died and property has increased in value
    does not afford basis for application of doctrine of laches
    against him.

Appeal from Ingham; Salmon (Marvin J.), J.
Submitted October 11, 1949. (Docket No. 57, Calen-
dar No. 44,556.) Decided January 9, 1950.

Bill by Henry S. Taylor against S. S. Kresge
Company, a Michigan corporation, and City of
Lansing for partition of real estate. Decree for
plaintiff. Defendant S. S. Kresge Company ap-
peals. Affirmed.

*Foster, Cummins, Snyder, Cameron & Foster
(Sorling, Catron & Hardin,* of counsel), for plaintiff.

*Kelley & Seelye,* for defendant S. S. Kresge Com-
pany.

SHARPE, J. This is a suit for partition of certain
premises in the city of Lansing and for an account-
ing. Plaintiff, a resident of Springfield, Illinois, al-
leges in his amended bill of complaint that he and
defendant company are the owners in fee simple and
as tenants in common of the following described
property located in the city of Lansing:

"The south 22 feet of the north 64–3/8 feet of the
west 1/3 of lot 9 block 110 according to the recorded
plat thereof;"

that the title of plaintiff is derived by inheritance
from Elizabeth H. Stryker, the grandmother of
plaintiff, who died intestate in 1919 leaving as her
only heirs 2 daughters and 2 grandsons, the children
of Charlotte S. Taylor, deceased; that plaintiff is

one of the 2 sons of Charlotte S. Taylor; that the title of defendant company is derived from a quit-claim deed executed in 1927 from the heirs of Elizabeth H. Stryker with the exception of plaintiff, who at that time was 19 years of age; that defendant company has built a portion of a store building on the east 12 feet of the 22-foot tract; that the west 10 feet of the parcel of land is used as part of an alleyway; that when defendant company obtained a five-sixths interest in the premises it knew and recognized that plaintiff owned the remaining one-sixth interest; that plaintiff is desirous that a partition and division of the land should be made between plaintiff and defendant company according to their several and respective rights or that the premises be sold and the proceeds divided among the parties entitled thereto; and that an accounting be had of the rents and profits of said land.

Defendant company filed an answer to plaintiff's amended bill of complaint in which it is stated:

"3. Answering paragraph 3 of said bill of complaint, this defendant admits that it received a quitclaim deed as therein alleged and avers that, by said deed, said persons did grant, bargain, sell, remise, release and forever quitclaim unto this defendant and to its successors and assigns, forever, all that certain piece or parcel of land situate in the city of Lansing in Ingham county and State of Michigan, known and described as follows:

"The south 22 feet of the north 64 3/8 feet of the west 1/3 of lot 9 of block 110, according to the recorded plat of said city,

and that, upon the execution of said quitclaim deed, this defendant entered upon said land adversely as against said plaintiff, with the intention of holding the same as its absolute property, and has remained in the possession of the same for the period of 15 years, and upwards, in actual, exclusive, continuous, visible, notorious, distinct and hostile possession

thereof as against said plaintiff; that it has used and improved said property, paid taxes thereon, constructed a portion of a valuable building thereon and has been in daily use of said premises for its own purposes during all of said period, all of which was known or should have been known by said plaintiff."

It appears that the premises involved were leased to defendant company by Elizabeth H. Stryker in 1918 for a term of 25 years; that after her death in 1919, defendant company treated her heirs as its landlord; that in July, 1927, a check for $1,000 for the quitclaim deed was forwarded to the attorney for the Taylor heirs and on August 15, 1927, plaintiff's guardian accounted for the receipt of plaintiff's share of these proceeds; that Robert C. Taylor of Virginia, Illinois, was the guardian of plaintiff by appointment of the county court of Cass county and on March 28, 1929, he filed his final account as guardian covering the period of July 1, 1927, to January 18, 1929; that plaintiff became 21 years of age on January 17, 1929, and signed a receipt for all of the residue of his guardianship estate; that on March 28, 1929, the court made an order approving the final report and discharging the guardian; and that the final report of the guardian contained the following entry under the date of August 15, 1927, "By sale of lot, at Lansing, Mich. $152.00." It also appears that the only real estate in Lansing in which plaintiff ever had any interest was the parcel involved in this litigation and a parcel now under lease to defendant.

In an opinion granting plaintiff relief, the trial court stated:

"The defendant S. S. Kresge Company is defending on the grounds of adverse possession and laches. It is this court's opinion that the affirmative defense of adverse possession is not applicable in this case for the reason that the defendant went into posses-

sion of the property recognizing plaintiff's title to a one-sixth interest in said land. An expression of their recognition of title is set forth in the Kresge Company letter of May 10, 1927, to Mr. Cummins wherein the company states: 'We are willing to wait until Mr. Taylor's younger son becomes 21 years of age before getting a quitclaim deed from him. This will obviate the necessity of court action being taken in Michigan to make the younger son's executing (execution of) the quitclaim deed effective.' And again in a letter dated May 10, 1927 the company wrote to Robert C. Taylor, Sr. in part as follows: 'We will look toward getting a quitclaim deed from your younger son upon his attaining majority.' Again on July 22, 1927 when Cummins wrote to the Kresge Company saying 'I have just received a quitclaim deed to the property in question in (the) Merrifield suit executed by all the heirs except the son of Mr. Taylor who is still a minor, which I am ready to deliver as you may suggest.' And again on July 25, 1947, when the Kresge Company wrote to Cummins, saying in part, 'In forwarding the deed, we should be glad to let us know the date on which the remaining (minor) heir will attain his majority.' And again when Mr. Cummins wrote to the Kresge Company on July 29, 1927, saying in part, I 'am asking Mr. Taylor to give date when other heir will come of age.'

"All of this would seem to make it conclusive that the Kresge Company went into possession of the property recognizing and admitting the existence of a superior title in another.   *   *   *

"There is nothing in this record which shows that the company after recognition of the plaintiff's title ever gave any notice of any kind which would change it into an adverse holding or that there were circumstances equivalent to notice of a hostile claim.   *   *   *

"We are then brought to the question of whether or not the plaintiff's conduct has been such as to create an abandonment of his legal right or an estoppel to assert it against the defendant. As has been

said the defendants at the inception recognized plaintiff's title and have continued to do so throughout and have done nothing to show a change of attitude concerning a continued recognition of title. While it appears to be a fact that the plaintiff received his share of the proceeds of the sale of this parcel of land, and that he had knowledge thereof in 1929, or at least is charged with having knowledge thereof, nevertheless such knowledge and acquiescence is not sufficient to bar him from his rights in said property. See *In re Flynn's Estate,* 171 Mich 136, where the Court said at page 141:

" 'The statement in the report of sale that appellant received $100 of the proceeds of the sale after she was 21 years old, and the fact that considerable time elapsed after she became of full age without action on her part, if it is a fact, is the only evidence that she acquiesced in or approved the action of her stepfather after attaining her majority.   *   *   * While it may be true that appellant has money derived from her special guardian for which she should account to someone, we perceive no legal ground for holding that she is upon this record estopped to objection to a confirmation of the sale.'   *   *   *

"After carefully considering this matter as a whole, I am brought to the conclusion that the plaintiff should be granted relief. It appears that a partition of the land cannot be made without manifest injury to the rights of the parties herein, and that the said land and premises should be sold under decree and by direction of this court, and that the proceeds of such sale after payment of the expenses thereof and the costs of this suit should be divided between the plaintiff and the S. S. Kresge Company according to their respective rights and interests therein and that plaintiff's share should be less the $152 with interest, all of the aforementioned to be subject to the easement rights which the city of Lansing has in the west 10 feet of said parcel."

Defendant company appeals and urges that a court of equity should not decree partition unless and until plaintiff has established his legal title, if any, in appropriate proceedings at law. We note that this issue of the jurisdiction of the equity court was not raised by the pleadings or on the trial. We also note that plaintiff in his bill asks for partition and an accounting and defendant company in its answer asked that title be quieted in defendant.

In *Wallace* v. *Harris,* 32 Mich 380, 389, we said:

"When the cause is only colorably one for partition, and the true end and purpose is evidently to obtain a determination of rights respecting title and possession which are purely legal, and no matters appear to create obstacles to a full, fair and final disposal of the controversy in a court of common law, there is solid ground for claiming that the litigation ought to be carried on in such a tribunal. But the reason for remitting the investigation to a common-law court is one of policy and fitness, rather than of any inherent want of power in a court of equity; and hence, if chancery decides, and there is no reversal in a proceeding directed to that end, the result is not void, but must stand and be respected. As a consequence of these considerations, there is much reason for saying that a failure to take the specific objection in the court of original jurisdiction may well justify the appellate court in treating it as waived, and in declining to pursue a course fraught with delay and cost and no inconsiderable hardship to some, if not to all the parties contending."

In the case at bar the relief asked was partition of real estate and an accounting. A court of equity is the only forum which could grant plaintiff the relief prayed for in his bill of complaint. In our opinion the trial court had jurisdiction of the subject matter and the parties.

Defendant company also urges that plaintiff's rights are barred by adverse possession. The record shows that defendant company obtained title to a five-sixths interest in the premises in 1927 by virtue of a quitclaim deed from the adult heirs of Elizabeth H. Stryker. Defendant company recognized that plaintiff still had a one-sixth interest and planned to obtain a deed from him when he became of age. These facts are plainly set forth in the letters noted in the trial court's opinion. When defendant company obtained its deed of the five-sixths interest in the premises in 1927 it became a cotenant of plaintiff. As among cotenants there is no ouster by sole possession of one of the tenants.

In *Campau* v. *Campau,* 44 Mich 31, we said:

"Where a person is in and has held possession of land rightfully under a claim of title which, when traced back, does not purport to convey the entire estate, the mist and ambiguity which shroud and surround the character of the possession, and claim made thereunder, cannot enlarge the actual title or rights acquired by possession thereunder. On the contrary, clearness and distinctness are requisite to acquire title by adverse possession, either in whole or in part, and especially is this so as against tenants in common. *Davis* v. *Filer,* 40 Mich 310, 316; *Gower* v. *Quinlan,* 40 Mich 572, 575; *Everts* v. *Beach,* 31 Mich 136 (18 Am Rep 169)."

In *Donohue* v. *Vosper,* 189 Mich 78, we said:

"It is also true that before a tenant in common may acquire a title against his cotenant by adverse possession, the proofs must be clear and cogent, and the case cannot be made out by inference. *Yelverton* v. *Steele,* 40 Mich 538. *Campau* v. *Campau,* 44 Mich 31, is cited, where it is held by this Court that:

" 'Such exclusive claim and denial of their right should be clear and unambiguous, and brought home

to the knowledge of the cotenants, either by express notice or by implication. And if the latter, all doubt growing out of the nature and character thereof should be against an ouster. The presumption should be that the tenant in possession respects and recognizes the rights of his contenants, until the contrary clearly appears; that the possession is rightful, and not to the exclusion of others having equal rights.'

"See, also, *Rich* v. *Victoria Copper Mining Co.,* 77 CCA 558 (147 Fed 380)."

Moreover, the record fails to show that defendant company gave plaintiff any notice that it was holding the property adverse to him. In *Houghton County* v. *Massie,* 215 Mich 654, we said:

" 'To transfer a permissive use into an adverse one there must be a distinct and positive assertion of a right hostile to the rights of the owner, and such assertion must be brought to his attention. 14 Cyc, p 1152.' *Weber* v. *City of Detroit,* 159 Mich 14 (36 LRA NS 1056). * * *

"It is true that a possession permissive in its inception may become adverse (*Ward* v. *Nestell,* 113 Mich 185), and that in order to give a hostile character to a possession permissive in its inception, it is not necessary that the land should have been first surrendered to the owner (2 CJ, p 134); but where possession is originally taken and held under the true owner, a clear, positive and continued disclaimer and disavowal of title and assertion of an adverse right brought home to the actual knowledge of the true owner are indispensable before any foundation can be laid for the operation of the statute of limitations. 2 CJ, p 134."

We are in accord with the finding of the trial court "that the affirmative defense of adverse possession is not applicable in this case."

It is also urged that plaintiff is guilty of gross laches in failing to assert his claims for over 18

years, during which time witnesses have died, and the property increased in value.

The general rule is that where plaintiff comes into equity for the protection of a vested legal right, the doctrine of laches has little, if any, application. See 30 CJS, p 524. In *Angeloff* v. *Smith,* 254 Mich 99, plaintiff, then a minor, and her husband were the owners of certain real estate by the entireties. The parties were divorced, but the divorce decree did not dispose of the lot and the divorced parties held title as tenants in common. Later the divorced husband, as a single man, deeded the lot to one Faje which property in turn was conveyed to Fiaeska who then conveyed it to Smith, the defendant. Plaintiff brought a suit in equity for partition of the lot after she became of age. We there said:

"The doctrine of laches is founded upon long inaction to assert a right, attended by such intermediate change of conditions as renders it inequitable to enforce the right. *Epstean* v. *Mintz,* 226 Mich 660.

"Where the right is not an executory one but is a vested legal title, the doctrine of laches has little, if any, application. 21 CJ, p 215. This is particularly true where the title is of record for the world to see.

"Plaintiff lost no right to relief through nonaction during her minority, as laches does not run against an infant. *Putnam* v. *Tinkler,* 83 Mich 628; *Dragoo* v. *Dragoo,* 50 Mich 573.

"Fiaeska's recognition of her title obviated the necessity of her asserting it against him by action. 21 CJ, p 243.

"No equities run against her in favor of Smith, as he bought with constructive notice of her title and she brought suit shortly after learning of the conveyance to him. The case is not accompanied by elements of estoppel and plaintiff cannot, under the circumstances, be held guilty of laches."

We conclude that the doctrine of laches is not applicable as applied to the facts in the case at bar.

The decree of the trial court is affirmed, with costs to plaintiff as against Kresge Company.

BOYLES, C. J., and REID, NORTH, DETHMERS, BUT-ZEL, CARR, and BUSHNELL, JJ., concurred.