*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAM JOSH VICTOR, LLC,

        Plaintiff/Counter-defendant-
        Appellee,

v

SOLOMON JACOB BENJAMIN,

        Defendant/Counter-plaintiff-
        Appellant.

UNPUBLISHED
February 8, 2024

No. 364441
Oakland Circuit Court
LC No. 2021-186805-CH

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

Defendant, Solomon Jacob Benjamin, appeals as of right the trial court's order granting plaintiff, Sam Josh Victor, LLC, summary disposition and denying defendant summary disposition of plaintiff's claim and defendant's counterclaim under MCR 2.116(C)(10). We affirm.

## I. FACTS

This appeal arises from a boundary dispute between the owners of two adjacent parcels of lakefront property on Pine Lake in West Bloomfield. Plaintiff LLC, operated by William Newman, owns 3105 Interlaken. Defendant owns the adjacent parcel at 3101 Interlaken. The dispute involves a narrow strip of land between the homes that are located on the two parcels (the disputed area). Plaintiff contends that property deeds and a 2020 survey reflect the true property line and demonstrate plaintiff's ownership of the disputed area. Defendant contends that, contrary to the deeds and the survey, the parties have adhered to a different property line that demonstrates defendant's ownership of the disputed area.

Plaintiff purchased 3105 Interlaken in October 2011 from Larry K. and Denise E. Farida, who owned 3105 Interlaken from November 1995 to October 2011. In February 2020, defendant purchased 3101 Interlaken from Dr. Eric Seiger, who had owned 3101 Interlaken for the previous 27 years. Shortly thereafter, defendant had a survey conducted and the property boundaries staked. Defendant testified that he did not agree with the location of the survey stakes and that his attorney advised him that the survey stakes were inaccurate.

Plaintiff also had a survey conducted. Plaintiff alleged that defendant thereafter moved a stake north from its survey location, and also moved sprinkler equipment that plaintiff had installed in the disputed area to a location north of the line represented in the 2020 survey. Defendant then planted a row of arborvitaes in the disputed area to establish what he contended was the property line.

In August 2020, plaintiff demanded by letter that defendant remove defendant's installations from the disputed area and restore plaintiff's sprinklers and the property to its previous condition. When defendant then installed landscape fencing in the disputed area, plaintiff initiated this action alleging that defendant was trespassing on plaintiff's property.

Defendant filed a counterclaim seeking to quiet title to the disputed area in his favor and alleging that the true property line was north of the survey line. Defendant alleged that beginning at least in 2002, Eric Seiger, the prior owner of defendant's property, did not adhere to the property line but instead planted a tree and established a mulch bed in the disputed area, and continued to landscape and otherwise possess the disputed area, including using a walkway in the disputed area. Defendant asserted that for at least 20 years, the prior owner of 3101 Interlaken maintained exclusive possession of the encroachment into the disputed area and therefore acquired the disputed area by adverse possession, prescriptive easement, and acquiescence to the new property line.

Both parties moved for summary disposition under MCR 2.116(C)(10), supported by affidavits and the depositions of Eric Seiger and defendant. Newman stated in his affidavit that after plaintiff purchased 3105 Interlaken in 2011, plaintiff maintained the property, including the pine trees and a sprinkler system in the disputed area. According to Newman, until 2020 he was unaware that invisible dog fencing had been buried in the disputed area by defendant's predecessor in interest, Eric Seiger. Newman stated that Seiger never claimed any right in the disputed area, and Seiger and plaintiff did not have any agreement permitting Seiger to use the disputed area. After defendant purchased 3101 Interlaken in 2020, defendant began to trespass into the disputed area by moving part of plaintiff's sprinkler system from the disputed area, planting arborvitaes, expanding defendant's landscaping north of the property line, and removing a pine tree from the disputed area.

Larry K. Farida stated in his affidavit that he and his wife, Denise Farida, owned 3105 Interlaken from November 9, 1995 to October 18, 2011, when they sold the property to plaintiff. Farida stated that he and his wife used the entirety of 3105 Interlaken during the entire time they owned 3105 Interlaken. Farida stated that during that time, Seiger sometimes entered onto 3105 Interlaken, but never claimed any ownership interest in, or right to enter, 3105 Interlaken, and that Seiger's use was intermittent and not exclusive. According to Farida, Seiger never claimed that the property line was other than that established by deed; Farida never agreed to modification of the property line, nor did Farida act as though the property line was modified. Farida was unaware that Seiger had installed an underground electronic dog fence and did not know whether Seiger had a dog. Farida stated that the property line was established by the deed and that he never considered any other line as the property line. Denise Farida made similar assertions in her affidavit.

In his deposition, defendant conceded that he purchased from Eric Seiger only the property described in the warranty deed, and that he does not dispute the property description in the warranty deed. He further testified that before he purchased 3101 Interlaken he did not discuss with anyone where the property line was, that he had no understanding of where the property line was, that he had no discussions with Seiger regarding the electric dog fence, and nothing indicated that an electric dog fence had been installed. Defendant further testified that in early 2020 he commissioned a survey, but ignored the survey results after his attorney told him that the survey stakes were not accurate. Defendant testified that when he asked Seiger where the property line was, Seiger told him that "the property line is how it appears, from the telephone pole down to the water."

Defendant testified that he had the arborvitaes planted in the summer of 2020 even though he was unclear where the property line was; he told the landscaper to follow the pathway between the garage and the courtyard in planting the shrubs. He testified that at the time he directed landscapers to plant the arborvitaes, he knew that the location for the shrubs was outside the boundary of his property as reflected by the survey. He admitted that the line that he adhered to was different than the property line identified in the survey. Defendant testified that to determine what he believes to be the property line, he drew a line from the pine trees in the mulch beds that he maintains as part of 3101 Interlaken straight to the walkway at the garage of 3101 Interlaken. He testified that he based his claim to a property line different than that of the survey upon the "physical characteristics of the property," Seiger's representation to him regarding the location of the property line, and his attorney's statement that the survey did not reflect the true property line. Defendant admitted that he did not have the training necessary to determine a property line.

Defendant also testified that he and plaintiff shared the lawn cutting services and together employed a landscape company to cut the grass on both parcels. He testified that west of the pine trees in the disputed area, the parcels are open grass with no physical demarcation of the property line. Defendant further testified that he walked in the disputed area at times because the path on his own property was so narrow that it was difficult to use. Defendant also testified that certain plantings by the previous owner, Seiger, encroached over the property line, but acknowledged that the encroachment was only on a small portion of the disputed area.

Eric Seiger testified that he owned 3101 Interlaken from 1993 until he sold the property to defendant in 2020. Seiger testified that he only conveyed to defendant the property described in the deed. He further testified that he never knew where the actual property line was located between the two properties and never discussed with anyone where the actual property line was. He admitted that he did not pay taxes on the disputed area.

Seiger testified that he installed an invisible dog fence in 1994 when he got a puppy; he gave the dog away three years later and thereafter did not have a dog. He testified that when he installed the fence he intended to locate it on his property and intended to honor the actual property line. In 2012, he used it again for one month in an attempt to keep his cat in his yard, but discontinued use of the fence because it was not effective. He testified that at the time he installed the invisible fence, it was marked with flags, but that other than the fence company, he discussed the invisible fence only with his housekeeper. Seiger testified that he never discussed with the Faridas the location of the property line or the location of the invisible fence.

Seiger testified that when he purchased 3101 Interlaken in 1993, there was a wooden walkway between the two houses, which he later replaced with the narrower brick walkway; he testified that he used the walkway daily, and often crossed into 3105 Interlaken to visit the Faridas, with whom he was friends. He testified that he believed that the walkway was on his property and did not extend beyond the property line; he only learned of the dispute about the property line from defendant. He testified that he and the Faridas, and later plaintiff, shared the cost of lawn mowing services and both lawns were cut at the same time by the same mowing service. Seiger testified that he never made a claim to any property north of the property line described in his deed; he maintained the two pine trees near the property line, but was not certain that the trees were on his property.

After a hearing on the motions, the trial court granted plaintiff summary disposition of plaintiff's claim and defendant's counterclaim, and denied defendant summary disposition. The trial court held that defendant's encroachment in the disputed area was a trespass onto plaintiff's property. The trial court also denied defendant's motion for reconsideration, holding that defendant had failed to establish either adverse possession, prescriptive easement, or acquiescence. Defendant now appeals.

## II. DISCUSSION

Defendant contends that he is entitled to summary disposition under the doctrines of adverse possession, prescriptive easement, and acquiescence. We review de novo a trial court's decision to grant or deny summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the claim and is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). Here, both parties moved for summary disposition under MCR 2.116(C)(10); the parties thus both agree that there is no genuine issue of material fact and their claims may be determined as a matter of law. See *El-Khalil*, 504 Mich at 160.

This Court reviews questions of statutory interpretation de novo. *American Civil Liberties Union of Michigan v Calhoun Co Sheriff's Office*, 509 Mich 1, 8; 983 NW2d 300 (2022). A claim for prescriptive easement is an equitable claim that also is reviewed de novo, *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007), as is a claim to quiet title, *Houston v Mint Group, LLC*, 335 Mich App 545, 558; 968 NW2d 9 (2021).

### A. ADVERSE POSSESSION

MCL 600.5801 provides the statutory basis for a claim of adverse possession:

No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

(4) In all other cases under this section, the period of limitation is 15 years.

A party claiming adverse possession must establish "clear and cogent proof of possession that is actual, continuous, open, notorious, exclusive, hostile, and uninterrupted for the relevant statutory period." *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018). To change a permissive use into an adverse use, the claimant must make a distinct and positive assertion of a right hostile to the rights of the owner, and this assertion must be brought to the owner's attention. *Taylor v SS Kresge Co*, 326 Mich 580, 589; 40 NW2d 636 (1950). A use is hostile when the use is "inconsistent with the right of the owner, without permission asked or given, and which would entitle the owner to a cause of action against the intruder." *Houston*, 335 Mich App at 559 (quotation marks and citation omitted). "Peaceable occupation or use by acquiescence or permission of the owner cannot ripen into title by adverse possession, no matter how long maintained." *King v Battle Creek Box Co*, 235 Mich 24, 35; 209 NW 133 (1926).

When the elements of adverse possession have been met, "the law presumes that the true owner, by his acquiescence, has granted the land, or an interest to the land, so held adversely." *Marlette Auto Wash*, 501 Mich at 202 (quotation marks and citation omitted). The 15-year period is counted from the time the original owner is disseized of the land, MCL 600.5829(1), which occurs "when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership." *Houston*, 335 Mich App at 559. Successive periods of adverse possession by different parties can be tacked to satisfy the 15-year period, but only if there is privity of estate between the parties. *Id*. at 560. Privity of estate is established when (1) the deed includes a description of the disputed property, or (2) when there is an actual transfer or conveyance of the disputed property by parol statements made at the time of conveyance, or (3) "a parol transfer may occur if a property owner is 'well-acquainted' with the previous property owner and had visited and used the disputed property 'for many years' before acquiring title." *Marlette Auto Wash*, 501 Mich at 203. In those scenarios, "the parties must have understood that an easement was appurtenant to the land." *Id*. (quotation marks and citation omitted).

In this case, defendant has not established the elements of adverse possession. Defendant purchased 3101 Interlaken in February 2020 and began exercising possession of the disputed area shortly thereafter by using a walkway that the parties agree intrudes onto 3105 Interlaken by a few inches. According to defendant, he also began maintaining certain landscaping features, including certain pine trees and landscaping beds in the disputed area. Defendant's possession was interrupted by plaintiff's letter in August 2020, and then plaintiff's complaint on March 9, 2021, asserting plaintiff's ownership of the disputed area and demanding that defendant cease any possession of the disputed area. Because defendant occupied the disputed area for less than 15 years, defendant could establish adverse possession only by tacking his period of possession to those of predecessors in interest in the property acquired by adverse possession with whom he had privity of estate, or if a predecessor in interest established adverse possession prior to defendant's purchase, which then would be appurtenant to defendant's property without the need to establish privity. See *Houston*, 335 Mich App at 560.

The record, however, does not support a finding that Seiger adversely possessed the disputed area by actually, continuously, openly, notoriously, exclusively, hostilely, and uninterruptedly possessing the disputed area for 15 years. Seiger testified that when he owned 3101 Interlaken, he regularly used the walkway, which encroaches onto plaintiff's property by a few inches. There was also testimony that mulch beds and plantings maintained by Seiger encroached slightly into the disputed area. Seiger, however, did not actually, continuously, openly, notoriously, exclusively, hostilely, and uninterruptedly otherwise use the disputed area. Seiger testified that in 1994, he installed an invisible, underground dog fence near his house, thereby encroaching into the disputed area. He testified that he used the underground dog fence for three years. Seiger testified that for some undetermined time after it was installed the buried fence was marked with flags, but the use of the flags was short-lived and thereafter the fence was not marked, and eventually not used by Seiger.

Seiger testified that he also at times maintained the two pine trees in the disputed area that were near the property line, but that he was not sure whether the trees were on his property. He testified that the grassy part of the disputed area did not have a discernable property line, and that both 3105 and 3101 Interlaken, including the disputed area, were mowed and maintained by a lawn service, the cost of which he shared with plaintiff and the previous owner of 3105 Interlaken. Seiger also testified that he never made a claim to any property north of the property line described in his deed, and that he never intended to assert ownership of the Faridas' property.

Newman, who operates plaintiff LLC, asserted that after plaintiff purchased 3105 Interlaken in 2011, plaintiff maintained the property, including the disputed area, and maintained a sprinkler system on plaintiff's property that included the disputed area. Because defendant is unable to establish that Seiger exclusively possessed the disputed area, defendant failed to establish the elements of adverse possession. The trial court therefore did not err by granting plaintiff summary disposition of defendant's claim of adverse possession.

## B. PRESCRIPTIVE EASEMENT

The elements of an easement by prescription are the use of the property of another that is open, notorious, adverse, and continuous for 15 years. *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 118; 662 NW2d 387 (2003). An easement by prescription thus requires a party to demonstrate the same elements as those for adverse possession, except for exclusivity. *Marlette Auto Wash*, 501 Mich at 202. A prescriptive easement results from "no more than an unopposed, continuous trespass for 15 years." *McDonald v Sargent*, 308 Mich 341, 344-345; 13 NW2d 843 (1944).

"If 'no single period' of adverse use amounts to the 15-year statutory period, a party claiming a prescriptive interest may tack the possessory periods of their predecessors in interest 'to aggregate the 15-year period of prescription' if the claimant can show privity of estate." *Marlette Auto Wash*, 501 Mich at 203, quoting *Stewart v Hunt*, 303 Mich 161, 164; 5 NW2d 737 (1942). Again, privity of estate is established only when (1) the deed includes a description of the disputed property, or (2) when there is an actual transfer or conveyance of the disputed property by parol statements made at the time of conveyance, or (3) "a parol transfer may occur if a property owner is 'well-acquainted' with the previous property owner and had visited and used the disputed property for many years before acquiring title." *Marlette Auto Wash*, 501 Mich at 203.

A claimant is not required to establish privity of estate, however, if a predecessor in interest acquired the easement by adverse use for 15 years. "A claimant seeking to prove the existence of a prescriptive easement may establish that the requisite elements were met by the claimant's predecessor in interest. When a prescriptive easement vests with the claimant's predecessors in interest, the easement is appurtenant and transfers to subsequent owners in the property's chain of title without the need for the subsequent owner to establish privity of estate." *Id*. at 203-204. In this case, defendant was required to establish either that Seiger had a continuous 15-year period of adverse use establishing a prescriptive easement before deeding the property to defendant, in which case the easement would be appurtenant and would have transferred to defendant without the need for defendant to establish privity of estate, see *id*. at 204, or defendant was required to demonstrate privity with his predecessors in interest to enable him to tack prior periods of easement use.

To establish a prescriptive easement through Seiger, defendant was required to present clear and cogent proof of possession that is actual, continuous, open, notorious, hostile, and uninterrupted, though not necessarily exclusive, for 15 years. See *id*. at 202. The evidence suggests that Seiger actually, continuously, openly, and uninterruptedly possessed only a small fraction of the disputed area, namely a portion of the walkway, which encroached onto plaintiff's property by inches; he testified that he used the walkway daily and that his guests also used it.

He did not actually, continuously, openly, notoriously, hostilely, and uninterruptedly otherwise use the disputed area, however. Seiger testified that in 1994, he installed an invisible, underground dog fence near his house, thereby encroaching into the disputed area. He testified that he used the underground dog fence for three years. Seiger testified that for some undetermined time after it was installed the buried fence was marked with flags, but the use of the flags was short-lived and thereafter the fence was not marked, and eventually not used by Seiger. Although Seiger at times maintained the two pine trees in the disputed area that were near the property line, he was not sure whether the trees were on his property, and never claimed any property north of the property line described in his deed. He testified that the grassy part of the disputed area did not have a discernable property line, and that he shared the cost of mowing both lots, including the disputed area, with the Faridas and later with plaintiff. We conclude that defendant did not demonstrate that Seiger's use of the disputed area was actual, continuous, open, notorious, hostile, and uninterrupted, and as a result did not establish a prescriptive easement.

## C. ACQUIESCENCE

Defendant also contends that he acquired an interest in the disputed area under the doctrine of acquiescence. "Acquiescence is established when a preponderance of the evidence establishes that the parties treated a particular boundary line as the property line." *Houston*, 335 Mich App at 567 (quotation marks and citation omitted). The question of acquiescence arises only "when there has been some agreement, whether tacit or overt, as to the location of the boundary." *Id*. at 568. A plaintiff seeking to quiet title bears the initial burden to establish a prima facie case of title to the property. *Trademark Props of Mich, LLC v Fed Nat'l Mtg Ass'n*, 308 Mich App 132, 138; 863 NW2d 344 (2014). If the claimant asserts title under a theory of acquiescence, the claimant must prove acquiescence by a preponderance of the evidence. *Killips v Manisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001).

A claim of acquiescence requires a showing that adjoining property owners treated a boundary line as the property line for 15 years. *Walters v Snyder*, 239 Mich App 453, 456-457; 608 NW2d 97 (2000). Hostility is not an element of a claim of acquiescence. *Id.* There are three theories of acquiescence, which are "(1) acquiescence for the statutory period, (2) acquiescence following a dispute and agreement, and (3) acquiescence arising from intention to deed to a marked boundary." *Houston*, 335 Mich App at 567. "The acquiescence of predecessors in title can be tacked onto that of the parties in order to establish the mandated period of fifteen years." *Houston*, 335 Mich App at 568, quoting *Killips*, 244 Mich App at 260. "Proof of privity is not necessary, however, to employ tacking of holdings to obtain the 15-year minimum under the doctrine of acquiescence[;] [t]herefore, when successive neighboring landowners use the property as marked by monuments . . . as if the monuments were accurate, for a period of 15 years, they have fixed the property line by acquiescence." *Houston*, 335 Mich App at 568, quoting *Siegel v Renkiewicz Estate*, 373 Mich 421, 426; 129 NW2d 876 (1964).

In this case, the parties do not dispute that plaintiff established a prima facie case of ownership of the disputed area by introducing the deed to the property. See *Trademark Props*, 308 Mich App at 138. Defendant therefore was required to demonstrate by a preponderance of the evidence that both parties treated a particular boundary as the true boundary line for 15 years; tacking is permitted and proof of privity is not required to tack holdings to obtain the 15-year minimum under the doctrine of acquiescence. *Houston*, 335 Mich App at 568. As noted, however, the question of acquiescence arises only "when there has been some agreement, whether tacit or overt, as to the location of the boundary." *Id.*

Here, the record does not demonstrate such an agreement. Seiger testified that he consistently used his walkway for more than 15 years without permission from either the Faridas or plaintiff. Seiger also testified that he intended only to adhere to the actual property line. Defendant therefore failed to demonstrate that with regard to the disputed area the parties intended to adhere to a line other than the actual property line, and thereby failed to demonstrate that he had acquired an interest in the disputed area by acquiescence.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates

-8-